(No. 37823.—

THE PEOPLE *ex rel.* John Enrietta, County Collector, Appellee, *vs.* GULF, MOBILE AND OHIO RAILROAD COMPANY, Appellant.

*Opinion filed Nov. 26, 1963.—Rehearing denied Jan. 20, 1964.*

Louis F. Gillespie and Hugh J. Dobbs, of Springfield, and Robert N. Wallace, of Joliet, (James N. Ogden, Gillespie, Burke and Gillespie, and Gray, Thomas, Wallace and O'Brien, of counsel,) for appellant.

August B. Black, State's Attorney, of Morris, for appellee.

Mr. Justice House delivered the opinion of the court:

This is an appeal by the objector, Gulf, Mobile and Ohio Railroad Company, from an order of the county court of Grundy County overruling the railroad's objection No. 12 to the 1959 taxes levied upon its property in the county.

The objection is on grounds similar to those made in *People ex rel. Kohorst* v. *Gulf, Mobile and Ohio Railroad Co.* 22 Ill.2d 104; *People ex rel. Hillison* v. *Chicago, Burlington and Quincy Raolroad Co.* 22 Ill.2d 88, and *People ex rel. Wenzel* v. *Chicago and North Western Railway Co.* 28 Ill.2d 205, *i.e.*, that while the railroad's property was assessed at full value, the county level of locally assessed property did not exceed 41.5% and the equalized assessment did not exceed 50% of full, fair cash value. Assessment of local property is alleged to be so grossly discriminatory as to be constructively fraudulent as to the objector.

The legal questions in this area have been resolved in the recent cases above referred to, and we are here dealing largely with questions of fact. The collector presented evidence which he asserts established that the railroad's assessed value was only about 80% of its full, fair cash market value, and that the sales ratio studies used to arrive

at the percentage values of locally assessed property produced an inept result.

The Department of Revenue of the State of Illinois has the duty of determining the fair cash value of railroad property. (Ill. Rev. Stat. 1961, chap. 120, par. 561.) When the assessment has been made and certified, as here, there is a presumption that the Department complied with the statutory mandate, and that the assessment is the full, fair cash value. This presumption finds support in official reports of the Department of Revenue and its predecessor, the Tax Commission, certificates, and expert testimony.

Raymond S. Danis, railroad assessor superintendent of the Department until his retirement on November 15, 1960, has been in railroad valuation work since 1927. As such assessor he assembled all data and prepared his opinion of value. He testified that several factors have been used for more than 30 years in the assessment of railroad property in Illinois, including a judgment factor, but that the primary one is capitalized income. The various factors made up a formula to which the judgment factor was then applied, but he emphasized that the formulaic result did not represent assessment value, and was a guide to be used for comparison purposes. Danis testified unequivocally that in his judgment the assessment of $49,700,000 represented the full, fair cash value of the objector's property in Illinois for 1959.

James R. Pollack, a city engineer and city manager prior to 1952, was called by the collector. Since then he has had experience in railroad appraisals as a consultant. He appraised railroads in Nevada for 10 months, and in preparation for that work he familiarized himself with utility appraisals in three States, including Illinois where he studied with Raymond S. Danis. Martin D. Miller, an engineer and appraiser who is a partner in a consulting firm, was also called. He supervised appraisal of all public utility property, including railroads, for the State of Nevada in 1956-1957, and set up systems for the State Tax Commission. Each of

these witnesses considered the Illinois system archaic and not adapted to modern conditions, but were not in agreement as to a proper formula to be used. Their opinions as to valuation were $61,851,800 and $69,455,000, respectively. Neither applied a judgment factor and both indicated that the Department's application of that factor constituted debasement and equalization.

This was countered by the rebuttal testimony of Charles M. Chapman, who was in charge of public utility assessments in Wisconsin for 29 years prior to his retirement. He approved the Department's approach but his opinion of value was $46,000,000. This lower valuation was by virtue of declining revenues and stock and debt values. He said an assessor should use the judgment factor, and indicated that the history created by a good assessor should not be ignored. In response to a question as to what produced the ultimate answer of a railroad assessor, he said: "In my opinion, just from my own experience, it is a review of that particular railroad's operations, its strength and weakness that will bring the assessor to a conclusion of whether his assessment should be raised from last year or lowered." These views were concurred in by H. Clyde Reeves, formerly Commissioner of Revenues of Kentucky.

A careful review of the entire record leads to the inevitable conclusion that judgment must be used by appraisers in the intricate problem of arriving at an assessed valuation of a railroad, whether it be by using various factors, then applying the judgment factor as is done in Illinois, or the choosing of a percentage for capitalizing net operating income and the fixing of the percentage weight to be given the reproduction cost factor.

The Department has chosen a method to carry out the statutory mandate and has used it for many years. That method has received the tacit approval of this court in a number of cases. (See *Chicago and North Western Railway Railway Co.* v. *Department of Revenue,* 6 Ill.2d 278;

*Chicago, Burlington & Quincy Railroad Co.* v. *Department of Revenue,* 17 Ill.2d 376; *People ex rel. Hillison* v. *Chicago Burlington and Quincy Railroad Co.,* 22 Ill.2d 88; *People ex rel. Kohorst* v. *Gulf, Mobile and Ohio Railroad Co.* 22 Ill.2d 104.) This attack by the collector upon the method of valuation used by the Department charged with that duty by the State falls short of overcoming the presumption. We are of the opinion that the record bears out the Department's valuation as being the full, fair cash value of the objector's Illinois property.

Just as there is a presumption that the Department complied with the statute in fixing the railroad's valuation, a like presumption obtains that there was compliance by the officials charged with locally assessing property. The sales-assessment ratio studies for locally-assessed property prepared by the Department of Revenue for the years 1951 to 1959, inclusive, were introduced in evidence. They show a fairly steady decline. In 1959 the weighted ratio was 37.52% and after application of the equalization factor (multiplier) it was 45.20% of full, fair cash value. The method of arriving at the result disclosed by such studies has been fully explained in the *Hillison, Kohorst* and *Wenzel* cases and need not be repeated. E. L. Maynard, supervisor of the property tax division of the Department of Revenue, testifying under section 60 of the Civil Practice Act, said that the procedures used are the same as those in other down-State counties and the same as those used for a number of years. He further stated that there were no significant changes in the level of market values in Grundy County. These ratio studies were sufficient to overcome the presumption that locally-assessed property was at full, fair cash value.

Expert witnesses H. Clyde Reeves, Dr. Frederick A. E. Ekeblad and Dr. Rolf A. Weil gave testimony similar to that in the *Kohorst* case. They expressed the opinion that the methods used by the Department were substantially those

recommended by the National Association of Tax Administrators, and that the studies were reliable.

The collector asserts that the sales-assessment method used by the Department is unreliable. The proof offered on this subject was very similar to that adduced in the *Wenzel* case. Dr. H. K. Allen, an authority on public finance, testified that the sampling technique is grossly defective in that the samples are not at random (being only those sold during the period) and that the samples included little commercial and industrial properties. Similar testimony was given by this witness in the *Wenzel* case. Also testifying were a prominent lawyer, a former county clerk and appraiser, the circuit clerk and recorder and others. The details of this evidence would unnecessarily lengthen this opinion. In essence the testimony was that many deeds bore no documentary stamps at all, that many others bore stamps of less than $2.20, that others had stamps indicating a consideration higher than the actual sales price, and that there was no way of telling whether the transactions were at arms length. There was rebuttal evidence by another attorney, two urban appraisers, and an abstracter, that in their experience sellers did attempt to fix the proper amount of stamps and none had observed a transaction where more or less stamps were affixed than were thought to be required. What was said in *People ex rel. Wenzel* v. *Chicago and North Western Railway Co.* 28 Ill.2d 205, 216, is appropriate here. "We cannot say that the plaintiff's proof so detracts from the reliability of the ratio studies that they should not be accorded the same probative value they were given in the *Hillison* and *Kohorst* cases." The assessments-sales ratio studies were admissible and establish the ratio between the full, fair cash value and the assessed value.

We are of the opinion that there has been discrimination against the objector amounting to constructive fraud. Therefore, the judgment of the county court of Grundy County is reversed and the cause is remanded with direc-

tions to sustain objection No. 12, to determine the amount of refund in accordance with the formula set up in *People ex rel. Kohorst* v. *Gulf Mobile and Ohio Railroad Co.* 22 Ill.2d 104, and to order a refund accordingly.

*Reversed and remanded, with directions.*