THE PEOPLE *ex rel.* DONALD L. HAWTHORNE, County Treasurer and Ex Officio Collector of Taxes of Woodford County, Plaintiff-Appellee, *v.* VERNON BARTLOW *et al.*, Objectors-Appellants.—PEOPLE *ex rel.* DONALD L. HAWTHORNE, County Treasurer and Ex Officio Collector of Taxes of Woodford County, Plaintiff-Appellee, *v.* RONALD J. BARTEL *et al.*, Objectors-Appellants.

Fourth District   Nos. 4—82—0366, 4—82—0367 cons.

Opinion filed January 6, 1983.

---

514

Thomas M. Atherton, of Frings, Bagley, Atherton & Clark, of Pekin, for appellants.

G. Patrick Riley, State's Attorney, of Eureka (Robert J. Biderman and Michael W. Hogan, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Plaintiff, the county collector of Woodford County, Illinois, filed an application for a judgment for delinquent taxes in the circuit court of Woodford County. Defendants, certain Woodford County taxpayers, filed objections to the real estate taxes in response to the application alleging actual and constructive fraud in failing to equalize township assessments. The trial court overruled the objections. We affirm.

Defendants, taxpayers in Spring Bay and Worth Townships in Woodford County, paid their 1980 real estate taxes under protest pursuant to section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 675). The county collector filed his application for judgment for delinquent taxes in accord with section 225 of the Act (Ill. Rev. Stat. 1979,ch. 120, par. 706).

Pursuant to section 194 defendants filed their objections to the taxes and a motion to dismiss the objections was filed, but later withdrawn.

The trial court held a conference between the parties as provided in section 194(a) (Ill. Rev. Stat. 1979, ch. 120, par. 675(a)). However, no demand having been made for a hearing within 90 days, the hearing was set for May 1982.

The causes were consolidated and the objections were heard on stipulated facts, with the parties submitting lengthy trial briefs; the facts may be summarized as follows.

The Woodford County Board of Review (Board) determined the level of assessments applicable to the 1980 real estate taxes for the various townships below 33⅓% of fair market value, resulting in a weighted urban value for the county of less than 33⅓%. The Board was informed by the Department of Revenue (Department) that unless it acted to equalize, the Department would apply a county-wide multiplier.

The Board met in February 1981 and unanimously decided to accept the Department's multiplier because of insufficient sales in 12 of 17 townships to equalize according to section 108(a) of the Revenue Act of 1939. (Ill. Rev. Stat. 1979, ch. 120, par. 589.1.) It was stipulated that at the time of the Board's decision its members were aware of the provisions of section 108(a).

Section 108(a) requires boards to equalize to 33⅓% in assessment districts by analyzing 25 property transfers in each district. If there are insufficient sales, a board of review is to use a random sample of sales and appraisals. The equalization process is to be completed by the date specified by law for adjournment of the Board with a report submitted to the Department. If a Board fails to make the report, or a proper equalization, the Department is authorized to supervise assessment "*** to the end that all assessments of property be made relatively just and equal ***." Ill. Rev. Stat. 1979, ch. 120, par. 589.1.

Under the authority granted in section 108(a) the Department applied the county-wide multiplier which raised the weighted urban value to 33⅓%. However, this did not cure the disparity of assessments between townships and resulted in some townships being assessed at greater than 33⅓%.

Taxpayers in Spring Bay and Worth Townships had their property assessed above 33⅓%. This resulted in their paying more taxes than they would have paid had appropriate township multipliers been used.

The gist of defendants' position, in the trial court, and here, is that the Board had a duty to equalize; the Board failed to equalize; this failure resulted in excessive overvaluation, and amounted to constructive fraud.

The trial court found that there was a variance between the average township levels of assessment among the several townships but that this did not, in itself, demonstrate that any property, or group of properties, had been grossly overvalued as that term had been previously accepted as the sole basis for a finding of constructive fraud.

The court further found that there existed substantial practical difficulties in February 1981 in providing the proper basis for equalization. Moreover, the court held that in February 1981 there was no binding authority in existence which defined the term "shall" as used in section 108(a) except for *dictum* in *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 328 N.E.2d 11, and that therefore a legitimate legal dispute existed as to the extent of the Board's duty to equalize.

■ Before continuing with the court's findings, it is necessary to digress. The Board's duty to equalize the assessments at issue here was litigated in *Overend v. Guard* (1981), 98 Ill. App. 3d 441, 424 N.E.2d 731. There, we determined that section 108(a) is mandatory and requires Boards of Review to equalize assessments by establishing township multipliers; this is an affirmative duty. A board may not weigh the costs and balance the hardships in establishing township multipliers and acquiesce in a multiplier established by the Department while ignoring the need for township multipliers.

Although we did not reverse in *Overend*, our disposition was predicated on the fact that the Board had adjourned. However, we reassert our admonition to Boards of Review not to disregard this duty in the future. Moreover, our disposition here is not to be understood as a retreat from our holding in *Overend*.

The trial court was correct in ruling that at the time of the Board's failure to equalize there existed a legitimate dispute as to its duty. The Board's action was taken prior to our decision in *Overend*; the only previous authority being the *dictum* in *Hamer*.

The central issue in this appeal is the trial court's ruling on constructive fraud. The issue before the court was whether constructive fraud exists as a matter of law when an assessing authority fails to comply with the duty to equalize, while that duty is legitimately in dispute. As the matter was heard on stipulated facts, the issue before us is whether, as a matter of law, the facts sustained the trial court's judgment. (*Crum v. Gulf Oil Corp.* (1979), 70 Ill. App. 3d 897, 388 N.E.2d 1008.) It is in this context that we must decide whether a knowing failure to equalize assessments between townships renders those assessments constructively fraudulent.

A taxpayer is entitled to relief from excessive valuation; however, courts have no power to fix values and a valuation is subject to judicial scrutiny only when fraudulent. (*People ex rel. Schmulbach v. City of St. Louis* (1951), 408 Ill. 491, 97 N.E.2d 252.) Actual fraud need not be shown, since constructive fraud will also serve as a basis for relief. *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.

There is a presumption, absent evidence to the contrary, that assessing officials perform their duties honestly and a court will not set aside an assessment merely because of a difference of opinion as to value. (*Clarendon.*) Therefore, if the property has been assessed at a value higher than it should have been through mere error of judgment, the courts are powerless as they may relieve only on the basis of fraud. *City of St. Louis.*

■■ Defendants have chosen to attack the valuations of their property on the basis of constructive fraud. Constructive fraud is any act, statement, or omission which amounts to positive fraud, or which is construed as fraud because of its detrimental effect upon public interests and public or private confidences. It requires neither actual dishonesty, nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others. It can be inferred from the circumstances regardless of any actual dishonesty of purpose. *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 378 N.E.2d 1345.

■■ ■ In the area of taxation, if the facts show that the taxing authorities have assessed property for taxation purposes at a value greatly in excess of its actual value, and the assessment was wilfully and deliberately made, such conduct amounts to constructive fraud. However, in these cases there must be a showing that the authorities did not act in good faith in order to rebut the presumption that public officials discharge their duties honestly. (*City of St. Louis.*) This, however, does not require a showing of wrongful motive. The presumption of honesty is rebutted by a showing of a failure to act in good faith. Thus, we agree with defendants that the trial court erred in ruling that constructive fraud requires a showing of scienter or wrongful motive. However, we do agree with the trial court's finding that constructive fraud had not been shown.

■■ A valuation is constructively fraudulent when property is assessed disproportionately higher than other similar property. Similarly, a valuation is fraudulent when it is reached under circumstances showing either a lack of knowledge of known sales, or a deliberate fixing of values contrary to known values. (*Clarendon.*) Defendants have attacked their assessments on both grounds.

■■ Turning to defendants' contention that the property in Spring Bay and Worth Townships was assessed disproportionately higher than other similar property, we note initially that the authorities relied on by defendants are inapposite. In *People ex rel. County Collector v. American Refrigerator Transit Co.* (1965), 33 Ill. 2d 501, 211

N.E.2d 694, defendant's property had been valued at 98% of its fair market value while other similar property had been valued at only 55%. The supreme court held this was a disproportionate valuation.

In *People ex rel. Ross v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1942), 381 Ill. 58, 44 N.E.2d 566, it was apparent on the record that there was a 15% disparity between all property in the State. In *Ross* the tax commission admitted that the taxes were excessive and illegal. However, the issue was not whether fraud existed because of disproportionate assessment.

Of greatest significance to our decision is the fact that defendants have failed to establish that the property was assessed disproportionately higher than other similar property. The only facts before the trial court show that all property in Spring Bay and Worth Townships may have been valued higher than all property in other townships. However, there is no showing that the property in the other townships was similar to that of defendants. Therefore, defendants' argument must fail on this point.

Defendants' second point, that the assessed valuation was reached under circumstances showing either a lack of knowledge of known sales, or a deliberate fixing of values contrary to known values, must fail as well. In *Clarendon* the supreme court relied on *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 202 N.E.2d 543, where the court stated that constructive fraud is shown only when the overvaluation is grossly excessive and it is proved that the assessment was made either in ignorance of the value of the property, or that it was not based on readily ascertainable facts.

Here the stipulated facts do not reveal that the property was grossly excessively overvalued. Whether there was an arbitrary, or grossly excessive, valuation constituting fraud depends on whether the property in one taxing district is required to pay more than its just proportion of the taxes levied. This, in turn, depends on whether the increased value for assessment purposes is greater in proportion to its actual value than the ratio which the value for assessment purposes of property in other taxing districts bears to its actual value. To determine this values in other taxing districts must be known. *People ex rel. Bracher v. Millard* (1923), 307 Ill. 556, 139 N.E. 113.

In the instant case no facts were present on the record which allowed this court to know the values of property in other districts. Therefore, it is impossible to know whether Spring Bay and Worth Township property owners are being required to pay more than their burden. This is so because it is impossible to know whether the assessed valuation in those townships is greater than their actual value.

It must be admitted that there is a difference in assessed valuations after equalization. However, for such a difference to constitute fraud it must be so excessive, and its existence so evident, as to overcome the presumption that it was honestly made. *Millard.*

It is apparent from the foregoing that the defendants have not met their burden of proof. The burden is on the taxpayer to show excessive valuation or actual fraud. The taxpayer will not sustain this burden unless he can show by clear and convincing evidence that the application of a multiplier results in a final assessment of property at a value grossly in excess of its actual value. (*City of St. Louis.*) Here, there has been no showing that the valuation is grossly in excess of the actual value of the property in Spring Bay and Worth Townships.

Where there is no proof that a valuation placed on the property of the taxpayer was wilful or arbitrary, or that the valuation is grossly in excess of market value, there can be no finding of constructive fraud. (See *People ex rel. Schlaeger v. Allyn* (1946), 393 Ill. 154, 65 N.E.2d 392.) Since there is no proof that the valuation placed on the property of the defendants was wilful or arbitrary, or grossly excessive, then this contention must fail as well.

■ The remaining two issues raised by defendants require less attention. Article IX, section 4(a) of the Illinois Constitution of 1970 provides:

> "Except as otherwise provided in this Section, taxes upon real estate property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law."

The equalization of assessments is the adjustment of graduated values of property as between different taxing districts, so that the whole tax imposed on each taxing district shall be justly proportioned to the value of taxable property within its limits, in order that one taxing district may not pay a higher proportion to the value of its taxable property than another. (*Millard.*) Although we disapprove of the procedure utilized by the Board and the Department, we do not agree that the procedure did not accomplish this equalization.

The rule of uniformity which has developed from article IX, section 4(a), requires that one person shall not be burdened with a greater proportion of the taxes, according to the value of his property, than another. It does not permit valuation by taxing officials of property in the same taxing district at a certain proportion of its true value while other property in that district is valued at a substantially lesser or greater proportion. *People ex rel. Tedrick v. Allied Oil Corp.* (1944), 388 Ill. 219, 57 N.E.2d 859.

Defendants' contention that the procedure used by the Board and

the Department here violates the rule of uniformity is without merit. The rule applies when there is some misconduct, or the assessment was made on a wrong basis, or an excessively high valuation was applied. However, establishing a system which provides for uniformity is a function of the legislature. It is true that courts may protect taxpayers from excessive valuations, knowingly and intelligently made, in violation of the rule. However, this is so only because an intentional violation of the rule of uniformity amounts to constructive fraud. (*Ross.*) Consequently, when officers, performing duties delegated by the legislature, honestly exercise their judgment, the Constitution forbids valuation by any other authority, including the courts. *Allyn.*

Uniformity is an ideal which both the legislature and the judiciary have been striving to attain for many years. However, it is apparent that actual uniformity, that is perfect equality amongst taxpayers, is little more than an ideal. The Constitution calls for adjustment of taxation "with a reasonable degree of uniformity, rather than with mathematical equality." *People ex rel. Skidmore v. Anderson* (1974), 56 Ill. 2d 334, 340, 307 N.E.2d 391, 395.

In the instant appeal, after the application of the State multiplier, the maximum disparity between townships in Woodford County is 4.88%. Defendants have presented facts which show that they have paid approximately 7% and 4% more in their respective townships in taxes than they would have had township multipliers been applied. However, they have not shown that they have sustained a greater burden of taxes as a result of the application of the multiplier. The disparity in the instant case must be seen as accomplishing a reasonable degree of uniformity, although mathematical equality has not been attained. Nevertheless, it cannot be said that there has been a valuation by taxing officials of one piece of property at a certain proportion of its true value and another in the same taxing district at a substantially greater proportion of its true value. *Allied Oil Corp.*

Defendants' contention that the violation of the rule of uniformity in the instant case constitutes a denial of equal protection, and a taking of property without due process, becomes moot in light of our determination that the rule of uniformity was not violated.

■ Even if we did not consider the point moot it has no merit. Excessive valuation results in discrimination. (*Ross.*) Violation of the rule of uniformity is indeed a denial of equal protection and constitutes a taking of property without due process. (*People ex rel. Toman v. Chicago Union Station Co.* (1943), 383 Ill. 153, 48 N.E.2d 524.) However, no such wide disparity exists here as did in *Toman* and therefore there is no violation of the rule of uniformity, as we have

already held further, as we have held, defendants have failed to show that the valuations imposed are excessive. It follows that equal *protection* and due process have not been violated.

For the foregoing reasons, the judgment of the circuit court of Woodford County is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.