(No. 58509.—

*In re* APPLICATION OF EDWARD J. ROSEWELL, County Treasurer (Edward Rosewell, County Treasurer, Appellant, v. United States Steel Corporation, Appellee).

*Opinion filed March 29, 1985.—Rehearing denied May 31, 1985.*

312

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, and Henry A. Hauser, and Thomas J. McNulty, Assistant State's Attorneys, of counsel), for appellant.

Flanagan, Bilton & Brannigan, of Chicago (Dean H. Bilton, Thomas E. Brannigan, and Thomas D. Flanagan, of counsel), for appellee.

DeJong, Poltrock & Giampietro, of Chicago (Lawrence A. Poltrock and Mildred F. Haggerty, of counsel), for *amicus curiae* Chicago Teachers Union, Local No. 1.

Arvey, Hodes, Costello & Burman, of Chicago (Eugene L. Griffin, Robert M. Sarnoff, Michael F. Baccash, and Theodore M. Swain, of counsel), for *amicus curiae* American Can Company.

Abramson & Fox, of Chicago (James L. Fox and Anthony P. Janik, of counsel), for *amicus curiae* Anglo American Warehouses.

John M. Cannon, Susan W. Wanat, and Ann Plunkett Sheldon, of Chicago (Mid-America Legal Foundation, of counsel), for *amici curiae* Chicago Association of Commerce and Industry *et al.*

Thomas D. Nyhan, Joseph E. McNitt, and Bruce R. Meckler, of Chicago (Pope, Ballard, Shepard & Fowle, Ltd., of counsel), for *amicus curiae* Illinois State Chamber of Commerce.

Brent S. Bohlen, of Springfield, for *amicus curiae* Taxpayers' Federation of Illinois.

JUSTICE WARD delivered the opinion of the court:

United States Steel Corporation (hereafter U.S. Steel or the objector), filed specific objections, pursuant to sections 194 and 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, pars. 675 and 716), to the Cook County collector's application for judgment and sale pertaining to real estate taxes on the objector's South Works plant in Chicago for the years 1975 through 1979. The taxes for each year were paid in full and under protest. U.S. Steel claimed that the assessor had valued the South Works plant in excess of its full, fair market value and that the assessor systematically undervalued other properties in Cook County. Following a bench trial, the circuit court of Cook County held that the South Works plant had been properly valued by the assessor at 100% of fair market value for the years in question, but held that the assessments constituted constructive fraud in that other properties in the county were valued at a lower percentage of market value prior to debasement. The court ordered refunds to U.S. Steel for each year in question. The total amount of the refunds is $9,991,230.71.

The Cook County treasurer, as *ex officio* county collector, appeals from that part of the judgment finding

constructive fraud and ordering refunds. U.S. Steel cross-appeals from that part of the judgment accepting the values established by the assessor as fair market valuations of the South Works plant for the years in question. We allowed a direct appeal under our Rule 302(b) (87 Ill. 2d R. 302(b)).

Anglo-American Warehouses, the Illinois State Chamber of Commerce, the American Can Company, the Taxpayers' Federation of Illinois, the Chicago Association of Commerce and Industry, the Illinois Manufacturers' Association, and the Mid-America Legal Foundation have filed *amicus* briefs supporting the objector. The Chicago Teachers Union filed an *amicus* brief in support of the Cook County treasurer.

U.S. Steel's South Works plant was established in 1881. The plant sits on 579.82 acres of land, 423.33 of which are subject to the county real estate tax and 156.49 of which are classified as common carrier real estate and are exempt from county taxation. South Works is an integrated steel mill consisting of a complex of one-story and multi-story manufacturing and warehouse buildings. In addition to the facilities for iron and steel production, there exist general support facilities and vacant and secondary-use buildings. Over the years numerous changes and improvements have been made and new facilities have been located wherever land was available and without reference to a master plan. This absence of planning has resulted in a steel-making plant which is inefficient compared to more modern facilities.

The market demand for domestic steel in general, and for South Works' products in particular, has diminished greatly in recent years. Furthermore, due to declining demand and increased foreign competition, the rod mill at South Works, which was constructed in 1974 and is the most modern facility at South Works, was closed in 1981.

Prior to the 1979 quadrennial reassessment, U.S. Steel submitted to the assessor a five-volume appraisal by William Townsley, an independent auditor, whom it had commissioned for that purpose. The Townsley appraisal relied primarily on the "cost approach" method of valuation, although it also contained a "market approach." Townsley found the fair market value of South Works to be $147.5 million as of January 1, 1979, the date of valuation for the 1979 tax year. This figure was actually an extrapolation of three different methods of valuation: the first reflected the original cost of items classified as real estate, less the quantifiable physical depreciation and functional and economic obsolescence, and plus the calculated land value ($149.8 million); the second method involved calculating the value of the entire operating property as a whole, deducting physical depreciation and functional and economic obsolescence, debasing the amount by the percentage of the property classified as real estate (29%), and then adding the underlying land value ($145.4 million); the final method utilizing the market approach involved the review of prior sales of three other operating steel mills. (The market-approach method of valuation required numerous adjustments to account for underutilized capacity and differences among the plants. The adjusted-market-approach figure was also debased by the percentage of property classified as real estate, and the land value was added, resulting in a figure of $149.3 million.) Townsley's final valuation of $147.5 million relied heavily on the first two methods of valuation (both involving the cost approach) because they provided for a more detailed analysis than the market approach.

Kenneth Kaval, director of appraisals for the Cook County assessor's office, coordinated the 1975 and 1979 quadrennial reassessment of South Works. In 1975, Kaval utilized the cost-approach method of valuation in-

corporated in the assessor's manual to arrive at the market value for South Works. According to Kaval, the manual accounts for functional and economic obsolescence in the application of the manual's depreciation chart. Kaval, however, did not know how the chart accounted for such obsolescence. Kaval noted that the manual includes a "depreciation system called the CDU, which includes one depreciation factor, realistic allowance for physical, functional, economic depreciation." Somewhat ironically, Townsley was the principal author of the manual which was prepared when he was a supervisor with the Cook County assessor's office. Townsley testified that the manual did not account for functional and economic obsolescence for specialized property such as South Works, but did not elaborate on the reasons why it did not.

In 1979, Kaval analyzed the Townsley appraisal and disagreed with Townsley in several respects. Most significantly, Kaval refused separate deductions for functional and economic obsolescence and applied a higher capitalization rate than that used by Townsley. Furthermore, Kaval included in the reassessment certain uncertified pollution-control facilities which U.S. Steel had represented to Townsley as being certified and not assessable. Similarly to Townsley, Kaval used a cost-approach valuation method. Kaval testified at trial that wherever possible he derived cost figures from the assessor's manual. For blast furnaces and other specialized steelmaking equipment, Kaval arrived at per unit cost figures after consulting periodicals and other steel producers.

The Cook County assessor found that in 1979 South Works had a fair market value of $169,852,400 and an assessed value of $67,940,960. (Cook County Ordinance 80—014 classified real property within the county and provides for assessment of each class at the following percentages of full market value:

| Class 1—vacant land | —22% |
| Class 2—residential, 6 units or less | —17% (16% in 1979) |
| Class 3—residential, 7 units or more | —33% |
| Class 4—not-for-profit corporation | —30% |
| Class 5—all other property | —40%) |

The board of appeals later reduced these figures, following a hearing, to $161,359,867 and $64,543,947, respectively.

U.S. Steel filed specific objections for the years 1975 through 1979, as mentioned above. Prior to trial, Townsley prepared five-volume appraisals of South Works for the years 1975 through 1978. His figures of fair market value compare to those of the assessor as follows:

|      | Assessor | Townsley |
|------|----------|----------|
| 1975 | $192,281,957 | $169,500,000 |
| 1976 | $189,524,914 | $164,500,000 |
| 1977 | $183,380,732 | $164,500,000 |
| 1978 | $178,822,655 | $153,000,000 |

(The assessor's figures include a value of $781,472 placed on certain uncertified pollution-control equipment which the parties now agree should have been included in the valuation of South Works. The Townsley figures do not include a valuation of the pollution-control equipment because he believed them to be certified. Interestingly, Townsley testified in effect that, were he to have included the pollution-control equipment in his appraisal, he would have valued them at $34.2 million.)

In reviewing a case of specific objection, the court will presume that the assessing authority competently and honestly performed its function. A taxpayer, in order to succeed, must prove actual or constructive fraud by clear and convincing evidence. *People v. Interna-*

*tional Business Machines Corp.* (1982), 89 Ill. 2d 287, 293; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104.

"Some guidelines have been established for the proof necessary to establish constructive fraud. Assessments that are disproportionately higher than those for similar property or assessments that are based on the assessor's own private opinion showing a lack of knowledge or a lack of honest judgment are indicative of constructive fraud. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05; *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 479; *Aldrich v. Harding* (1930), 340 Ill. 354, 358; *People ex rel. Carr v. Stewart* (1924) (315 Ill. 25, 30.) Similarly, overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made and, therefore, is constructively fraudulent. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05; *People ex rel. Paschen v. Hendrickson Pontiac, Inc.* (1957), 12 Ill. 2d 477, 480; *People ex rel. Callahan v. Gulf, Mobile & Ohio R.R. Co.* (1956), 8 Ill. 2d 66, 69-70.) Once the presumption of the validity of the assessment is overcome, it becomes incumbent upon the assessor to produce evidence to justify the assessment. (*People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 100.) Moreover, a determination of whether the assessor has committed constructive fraud depends upon the facts and circumstances of each particular case. *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 378; *Chicago & North Western Ry. Co. v. Department of Revenue* (1955), 6 Ill. 2d 278, 283-84, *cert. denied* (1956), 351 U.S. 950, 100 L. Ed. 1474, 76 S. Ct. 844." *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 293.

U.S. Steel contends that the levy of its real estate taxes for the years in question was excessive because other property in Cook County was generally underassessed. Assuming for this argument that South Works was assessed at full, fair market value, if other property within the taxing district was undervalued by the asses-

sor, the tax base would not be accurately reflected and U.S. Steel would be taxed more than its proportionate share. The annual median level of assessment of all property in Cook County, as determined from the Department of Revenue's assessment/sales ratio studies, are as follows:

| Year | % of fair market value |
|------|------------------------|
| 1975 | 79.09 |
| 1976 | 92.96 |
| 1977 | 84.55 |
| 1978 | 74.65 |
| 1979 | 65.95 |

Therefore, the studies indicate an average annual deviation of approximately 7% to 34% in the assessment of South Works relative to other property within the county during the period in question.

The treasurer contends that the assessment/sales ratio studies are inadequate to show the actual median levels of assessment because they are not random, are unrepresentative, and are not sufficiently edited. The contention of the treasurer is correct. Although assessment/sales ratio studies have previously been used for various purposes (see *Rosewell v. La Salle National Bank* (1981), 450 U.S. 503, 67 L. Ed. 2d 464, 101 S. Ct. 1221; *People ex rel. Enrietta v. Gulf, Mobile & Ohio R.R. Co.* (1963), 29 Ill. 2d 605; *People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205; *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88), the treasurer has produced sufficient evidence to question the accuracy of the median levels of assessment for Cook County property as reflected in the assessment/sales ratios studies for 1975 through 1979, and the objector has failed to carry its burden of establishing the validity of the studies for the purpose involved here. U.S. Steel points out that in-

troductory notes to the studies state:

"Sales ratio findings *** provide a measure of the average assessment level for a given geographic area or category of property against which assessment on individual parcels may be judged in determining the degree of over or under assessment."

The treasurer showed, however, that the studies, insofar as Cook County property is concerned, do not meet the standards of the International Association of Assessing Officers. Besides lacking randomness, representativeness, and sufficient editing, the coefficients of dispersion are too high for the median assessment levels to have statistical significance relative to the standard of proof. The International Association of Assessing Officers standards state that the coefficients of dispersion should not exceed 20. (See also the 1979 report of the Cook County Real Estate Tax Study Commission.) For the years from 1975 to 1979, the coefficients of dispersion of the median levels of class V Cook County property ranged from 42.1 in 1979 to a high of 101.7 in 1976.

Barbara Moore was called as a witness by the collector. She is the manager of the equalization and standards section of the Property Tax Administration Bureau of the Department of Revenue and has held that position since 1977. She coordinated the compilation of the assessment/sales ratio studies for each year in question here. Moore stated that the primary purpose of the studies is to determine the equalization factor for various counties. Moore's testimony indicates that little, if any, editing of Cook County sales was accomplished. In fact, the Department rejected the figures provided from Cook County in 1976 because of obvious errors, including sales from other years. Moore also stated that the studies are not adjusted for time, financing and personal property, as called for in the standards of the International Association of Assessment Officers (IAAO) and that they are

neither random nor representative of industrial properties within the county.

Gregory Lafakis, the general counsel for the Cook County assessor's office, also testified. He has conducted classes and seminars on sales ratio studies. Lafakis was accepted without objection as an expert on statistics and sales ratio studies. He stated that the purpose of the IAAO was to promulgate policies and standards to improve the procedures used by all assessing officers.

Lafakis agreed with Moore that the sales information from Cook County was not adjusted for time, financing and personal property and that the study sample was neither random nor representative. Lafakis stated that the Department of Revenue did more and more editing of the Cook County figures during the time frame involved, but at no time was the editing complete. Lafakis reiterated that the coefficients of dispersion for class V Cook County property during the years in question greatly exceeded the standard recommended by the IAAO(20). Given a coefficient of dispersion of 99.1 and a median of 35.9% for 1975, for example, Lafakis explained that the actual median could be anywhere from 0 to 70. It would be highly unlikely that any property selected at random would exhibit the median ratio. Moreover, Lafakis stated that the general effect of inflation on a quadrennial assessment system would drive down the average assessment/sales ratio. Therefore, it is not surprising that the ratio exhibited by the studies was less than the statutory 40%.

U.S. Steel attempted to impeach Lafakis with his earlier testimony as a witness for U.S. Steel in a case relating to real estate tax for the years 1972 through 1974. In that case Lafakis testified that the studies were valid for determining the median level of assessment. Lafakis explained here that in 1972 through 1974, the assessor's office had two employees who fully edited the sales in-

formation. There was no such position in the assessor's office after 1974. Finally, Lafakis clarified that his testimony was not that the studies should not be used, but that they should be afforded little weight.

It is true that assessment/sales ratio studies have been used before as evidence of undervaluation of other properties. (*People ex rel. County Collector v. American Refrigerator Transit Co.* (1965), 33 Ill. 2d 501; *People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205; *People ex rel. Enrietta v. Gulf, Mobile & Ohio R.R. Co.* (1963), 29 Ill. 2d 605; *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88; *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104.) All of these decisions are distinguishable from the present situation. The Cook County collector stipulated to the use of the studies in *American Refrigerator*. In each of the four cases the objector involved presented expert witnesses who testified in support of the use of the studies. In contrast, the testimony of Moore and Lafakis here went largely uncontradicted.

New York has addressed the validity of assessment/sales ratio studies for the purpose of determining whether the assessed value reflects the full market value. New York has enacted a statute which allows the use of the studies for such purposes in all parts of the State except in the city of New York and Nassau County. In *In re Colt Industries, Inc. v. Finance Administrator* (1982), 54 N.Y.2d 533, 430 N.E.2d 1290, *appeal dismissed* (1982), 459 U.S. 983, 74 L. Ed. 2d 379, 103 S. Ct. 335, it was held that the statute was not unreasonable as it recognized the unique nature of those communities with their high density of population and diversity of property. Nor was there a violation of due process by enactment of the statute restricting the use of State equalization rates as proof of the ratio between assessed and

full value as long as other methods are available even if they are more costly and cumbersome. Data concerning selected parcels and actual sales are available as evidence in New York to show an unequal assessment in all assessing units.

Illinois does not have a statute similar to that of New York. We do not, however, mean to imply that assessment/sales ratio studies may not be used as evidence of valuation in Cook County under any circumstances. Where, however, there is uncontradicted evidence that the studies are not random, not representative, unadjusted and insufficiently edited, an objector cannot rely solely on their use to establish clear and convincing evidence of constructive fraud.

U.S. Steel contends in its cross-appeal that the trial court erred in finding that the fair market value of South Works for each year in question was the assessment value as established by the assessor of Cook County. The trial court found that U.S. Steel had not proved that differences between its valuations and those of the assessor constituted constructive fraud.

The underlying bone of contention in the cross-appeal is whether the objector must prove constructive fraud in the assessed value of South Works relative to its fair market value independently of the constructive fraud found by the trial court based on the undervaluation of other class V property. U.S. Steel contends that, since constructive fraud was found by the trial court as to the undervaluation of other properties, jurisdiction was established and the court could consider evidence of overvaluation which was not clearly and convincingly fraudulent. Because we have determined that U.S. Steel has not established through sufficient evidence that other class V Cook County property was undervalued in relation to South Works, this contention cannot be entertained. In any event, we consider that U.S. Steel may

not rely upon the existence of constructive fraud relative to undervaluation of other class V properties to introduce evidence of valuation of its South Works plant in excess of fair market value which is not sufficient to be considered constructively fraudulent. Whether or not other property within the class may have been undervalued is irrelevant as to whether South Works was valued in excess of fair market value.

It is clear that "[i]f property has been assessed higher than it should have been through a mere error of judgment on the part of the officers making the valuation, the courts are powerless to rectify the error." (*People ex rel. Frantz v. M.D.B.K.W., Inc.* (1966), 36 Ill. 2d 209, 211; *People ex rel. Munson v. Morningside Heights* (1970), 45 Ill. 2d 338.) Actual constructive fraud must be proved. The valuation of property is, by its nature, somewhat subjective. If the assessor exercised his informed judgment in valuing South Works, the valuations placed thereon will not be discarded unless clearly excessive.

We examine, then, the difference in valuations reached by the assessor and Townsley. Although they are great in absolute dollar amounts (from $13.85 million to $25.8 million), they appear less when viewed in terms of percentages (from 9.3 to 16.3%).

It should be first noted that U.S. Steel accepts, as it did at trial, the assessor's valuations of certain pollution-control items. The value of this equipment should be added to Townsley's calculations of fair market value since he did not include them in making his calculation. In effect, Townsley testified that, if he had known that the pollution-control devices were not certified, he would have valued them at $95 million with accumulated depreciation of $60.8 million for a net of $34.2 million. The assessor, however, assessed the pollution-control devices at $781,472. The reason for the great discrepancy here is

not set out in the record. We believe that, for purposes of comparison, Townsley's valuation for the pollution-control devices should be added to his overall valuation of the plant for each year in question. The sum for 1979 comes to $181.7 million, which exceeds the valuation reached by the assessor and the board of appeals. When the $34.2 million figure is added to Townsley's valuation for each year at issue, the sums exceed the assessor's determinations of fair market value.

Townsley calculated that 28.66% of the South Works plant should be assessed as real estate, but rounded the figure to 29%. Kaval applied the actual figure calculated without rounding. Next, Kaval applied reduced valuation rates to vacant building space, while Townsley effectively eliminated them from his fair market valuations. Too, whereas Townsley found U.S. Steel's internal rate of return to be 6.9% and rounded to 7%, the assessor chose a capitalization rate of 7.5% based on the industry average. We cannot say that any of these figures or methods employed by the assessor were arbitrary, unreasonable or fraudulent. Moreover, U.S. Steel does not argue in its reply brief that its proof that South Works had a fair market value less than that reached by the assessor was by more than a preponderance of the evidence, much less by clear and convincing evidence.

Townsley testified that the assessor's manual does provide for functional and economic obsolescence depending upon its use and application. Why the manual would not provide accurate figures for South Works is not clear from the record. Townsley merely stated that his figures are better than those of the assessor because he went into more detail. U.S. Steel has failed to overcome the presumption that the assessor's valuations were fair and has failed to show actual or constructive fraud by the assessor relative to South Works during the years in question.

For the reasons given, the judgment of the circuit court is affirmed as to the subject of the cross-appeal and is reversed as to the appeal to this court and the cause is remanded. The circuit court of Cook County shall enter an order denying the objector a refund for the years 1975 through 1979.

*Affirmed in part and reversed in part; cause remanded, with directions.*