RICHARD T. WALSH *et al.*, Plaintiffs-Appellants, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Third District   No. 3—95—0813

Opinion filed March 7, 1997.

BRESLIN, J., dissenting.

Barbara J. Welsch (argued), of Pekin, for appellants.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Janon E. Fabiano (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Plaintiffs, Richard T. Walsh and Barbara J. Welsch, appeal from an order of the circuit court of Tazewell County affirming the decision of the Property Tax Appeal Board (PTAB), which found that the Tazewell County Board of Review (Review Board) had properly established the 1992 equalized assessed valuation of $100,000 for the subject parcel of real property owned by the plaintiffs and located in Pekin Township, Tazewell County. The plaintiffs maintain that the subject property should have had an equalized assessed valuation of $40,850.

The issue presented for our consideration in this matter is whether the method of valuation used by the Review Board to value plaintiffs' property violated the uniformity of taxation clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 4) or the equal protection clause of the United States Constitution (U.S. Const., amend. XIV). We hold that the method of valuation used by the Review Board violated the constitutional requirements of uniformity of taxation and we reverse and remand on that basis.

In order to rule on the plaintiffs' appeal, it is necessary to briefly discuss the history of property taxation in Tazewell County. The townships comprising Tazewell County last conducted a true fair market value assessment of the property within their jurisdiction in 1957. Since 1957, Pekin Township and Tazewell County have determined the assessed valuation of real property solely by means of the "mass appraisal method."

Under the mass appraisal method of assessment, each township assessor begins by calculating the average percent of increase or decrease in home sale prices within the township for the previous three years. This calculation yields a percentage factor that is then applied uniformly to all real property in the township. For the 1992 tax year, the Pekin Township assessor uniformly increased the valuation of all real property within the township, including the subject property, by 11.7%.

In January 1993, in response to complaints that certain parcels of real property were "underassessed," the Review Board removed approximately 40 parcels of property from the mass appraisal system. Those properties were reassessed based upon their current fair market value, which was determined by the most recent selling price, if available, plus yearly mass-appraisal-method increases for each year between the most recent sale and 1992. The subject property was one of those parcels.

In the case of the subject property, the 1992 selling price paid by the plaintiffs was used to establish the valuation. As a result of this change in method of valuation, the plaintiffs' real estate property tax for 1992 increased to $9,441.40. Had their property been assessed according to the mass appraisal method, the tax would have been $3,830.46. It is undisputed that all other real property in the township and the county continued to have its valuation determined only by the mass appraisal method.

The evidence presented in the hearing before the PTAB established that the plaintiffs' property had an assessment to sales ratio of 28%, *i.e.*, the equalized value assessed valuation established by the Review Board amounted to 28% of the parcel's 1992 sales price. The plaintiffs presented evidence of similar parcels that sold in 1992 that were allowed to remain in the mass appraisal system. These properties had assessment to sales price ratios ranging from 7% to 39%. The Review Board presented evidence of 11 parcels similar to the subject property that were sold in 1992 that remained in the mass appraisal system. These properties had assessment to sales price ratios ranging from 28% to 63%.

The PTAB held that because the subject property's assessment to

sales price ratio of 28% was within the range of ratios for comparable properties, *i.e.*, 7% to 63%, the plaintiffs had failed to prove that the constitutional protections of uniformity and equal protection had been violated by removing their property from the mass appraisal system. The plaintiffs then filed this appeal.

■ Before ruling on the merits of the plaintiffs' appeal, we must determine the proper standard of review. It is well settled that the findings of an administrative agency are *prima facie* true and correct and will not be disturbed by a reviewing court unless they are against the manifest weight of the evidence. *La Salle Partners, Inc. v. Illinois Property Tax Appeal Board*, 269 Ill. App. 3d 621, 632 (1995). However, it is also well settled that the manifest weight of the evidence standard does not apply where the issue is whether the assessment was based upon "an improper method of valuation rather than a mere difference of opinion as to the market value of a particular piece of property." *Chrysler Corp. v. Illinois Property Tax Appeal Board*, 69 Ill. App. 3d 207, 210-11 (1979). Further, where the question on review is one of law, the decision of the PTAB will be reviewed *de novo*. *Kankakee County Board of Review v. Illinois Property Tax Appeal Board*, 131 Ill. 2d 1 (1989).

As the matter *sub judice* involves a question of the method of valuation, rather than a mere difference of opinion over the market value, as well as matters of constitutional law, we review the PATB's decision *de novo*.

The plaintiffs maintain on appeal that removing a select few parcels of property from the mass appraisal method and subjecting those parcels to a different method of appraisal violates the constitutional rights of those property owners. The PTAB maintains that as long as the Review Board correctly determines the fair cash value of the plaintiffs' property, the plaintiffs' appeal should fail. We disagree.

■ If the issue were simply whether the Review Board had correctly determined the fair cash value of the subject property, we would agree with the PTAB. Section 20 of the Illinois Revenue Act of 1939, applicable during the tax year in dispute, provides that "[e]ach tract or lot of real property shall be valued at $33^1/3$ % of its fair cash value" (35 ILCS 205/20 (Michie 1992)). Fair cash value is normally associated with fair market value, *i.e.*, what the property would bring at a voluntary sale where the owner is ready, willing and able to sell, but not compelled to do so, and the buyer is likewise ready, willing and able to buy, but not forced to do so. See, *e.g.*, *People ex rel. McGaughey v. Wilson*, 367 Ill. 494 (1937). Illinois courts have consistently held that "[a] contemporaneous sale between parties dealing

at arm's length is not only relevant to the question of fair cash market value but would be practically conclusive on the issue of whether an assessment was at full value." *Residential Real Estate Co. v. Illinois Property Tax Appeal Board*, 188 Ill. App. 3d 232, 242 (1989).

Plaintiffs, however, do not contend that their property was assessed at more than its fair market value. They maintain instead that even though their property was assessed based upon its fair market value, the rate of taxation of their property was, nevertheless, significantly higher than that applied to other comparable property in the township. Plaintiffs further maintain that this disparity was the result of the unconstitutional use by the Review Board of a different method of valuation from that used for those other comparable properties. We agree.

In the assessment year 1992, Tazewell County and its townships determined fair cash value for all real estate, except 40 parcels, not by reference to current fair market value, but by the relationship of each parcel to its proportional share of the fair cash value of all property in 1957. Whether this is an appropriate method for determining fair cash value is not an issue before this court. At issue is whether, as a matter of law, removing one particular parcel from this system and subjecting it to a different method of valuation in order to increase the assessed valuation of that property violates the constitutional requirements of uniformity of taxation and equal protection. We hold that it does.

■ Article 9, section 4(a), of the Constitution of 1970 provides:

"Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." Ill. Const. 1970, art. IX, § 4(a).

It is a fundamental constitutional principle that uniformity of taxation requires equalization of the burden of taxation. *Apex Motor Fuel Co. v. Barrett*, 20 Ill. 2d 395, 401 (1960); *People ex rel. Hawthorne v. Bartlow*, 111 Ill. App. 3d 513, 520 (1983). Our supreme court has consistently held that an equal tax burden cannot exist without uniformity in *both* the basis of assessment and in the rate of taxation:

"The principle of uniformity of taxation requires equality in the burden of taxation. (*People ex rel. Hawthorne v. Bartlow* (1983), 111 Ill. App. 3d 513, 520.) This court has held that an equal tax burden cannot exist without uniformity in both the basis of assessment and in the rate of taxation. (*Apex Motor Fuel Co. v. Barrett* (1960), 20 Ill. 2d 395, 401.) The uniformity requirement prohibits taxing officials from valuating one kind of property

within a taxing district at a certain proportion of its true value while valuating the same kind of property in the same district at a substantially lesser or greater proportion of its true value." *Kankakee County Board of Review v. Property Tax Appeal Board*, 131 Ill. 2d 1, 20 (1989).

■ We recognize that uniformity in the burden of taxation need not be mathematically precise. *Apex Motor Fuel*, 20 Ill. 2d at 401. We also note that reassessing only a limited group of properties in a township is not *per se* indicative of an unequal tax burden. *People ex rel. Costello v. Lerner*, 53 Ill. App. 3d 245, 249 (1977). Under the facts of this case, however, we find that the plaintiffs have proven an overvaluation of the subject property when compared to other property in the township, in violation of the uniformity clause.

We note that the record shows a significant portion of the real estate in Tazewell County has an assessed valuation between 7% and 63% of current market value as determined by recent actual sales prices. While the mass appraisal system used in Tazewell County maintains proportional equalized valuation among the properties within the township or county, it appears to have little, if any, relationship to the true, or fair cash, value of the property in the county. Thus, the mere fact that the subject property's assessment to sales price ratios fits within a range of 7% to 63% is of little importance in determining whether the subject property has been assessed in violation of the constitutional uniformity clause.

We must look instead to whether the use of a radically different method of assessment from that used by the Review Board to determine the value of most of the other property in the taxing district violated the uniformity clause. In *People's Gas Light & Coke Co. v. Stuckart*, 286 Ill. 164, 173 (1918), our supreme court held that the actions of the taxing body violated the uniformity clause where it routinely assessed most taxpayers by simply copying the assessment from the previous year, but assessed the appellant's property and a few other properties at arbitrarily different rates, each at a higher rate than it had been assessed in the previous year. *Stuckart*, 286 Ill. at 173. In holding that the individual assessments violated the uniformity clause, the court held:

"The board of equalization which made this assessment was bound to make it according to law and the rules which it had promulgated for assessing [property]. It did not do so but knowingly and intentionally disregarded its rules completely, making no pretense of applying them in the great majority of cases and making its valuation in individual cases according to its will without reference to the rules, instead of according to its judgment with refer-

ence to the rules. The appellant was knowingly and intentionally discriminated against and the result was a fraud upon it. The assessment cannot be sustained." *Stuckart*, 286 Ill. at 177.

We find that, as in *Stuckart*, the Review Board's abandonment of the mass appraisal method of assessment in a few individual cases, including the plaintiffs', intentionally discriminated against those property owners and resulted in a constructive fraud upon the plaintiffs. We find that the record supports the plaintiffs' contention that the Review Board's valuation methods resulted in comparable property being valued at a substantially lesser proportion of its true value than the subject property. *Kankakee County*, 131 Ill. 2d at 20. The assessment, therefore, cannot be sustained.

As we are reversing the circuit court based upon nonconformity within the uniformity of taxation clause of the Illinois Constitution, we will not address plaintiffs' argument that the Review Board violated the federal constitutional doctrine of equal protection.

In sum, we conclude that the Review Board erred as a matter of law in removing the subject property from the mass appraisal method of valuation used to value substantially all other property in the taxing district. Accordingly, we remand this cause for further proceedings consistent with the views expressed herein.

Reversed; cause remanded.

MICHELA, J., concurs.

JUSTICE BRESLIN, dissenting:

Because I believe that the plaintiffs do not have a right to insist that the Review Board assess their property at an amount that is less than the fair market value, and because I believe the PTAB lacked jurisdiction to consider the plaintiffs' constitutional claims, I would analyze this case differently. Therefore, I respectfully dissent.

The tax statute applicable during the tax year in dispute mandates that "[e]ach tract or lot of real property shall be valued at $33^1/_3\%$ of its fair cash value." 35 ILCS 205/20 (West 1992). The fact that "other property *** may have been undervalued is irrelevant as to whether [the plaintiffs' property] was valued in excess of fair market value." *In re Application of Rosewell*, 106 Ill. 2d 311, 325, 478 N.E.2d 343 (1985).

The plaintiffs admit that their property was assessed at its fair cash value. Thus, it is clear that the assessment was proper under the statute. But the plaintiffs complain that they are entitled to an assessment that is statutorily invalid because other properties have

received such an assessment. In my view, the plaintiffs are not entitled to such relief even though the mass appraisal system that was used here is vulnerable to constitutional attack. Neither the PTAB nor the courts can order that an incorrect assessment be substituted for an admittedly correct one. Two wrongs do not make a right.

Moreover, the plaintiffs may not attack the constitutionality of the mass appraisal system before the PTAB. The statute that provides for appeals to the PTAB limits the appeals before it. Section 111.1 of the Revenue Act of 1939 provides that a taxpayer may appeal the decision of a Board of Review "as such decision pertains to the assessment of his property for taxation purposes." 35 ILCS 205/111.1 (West 1992). This is the only power of review granted to the PTAB. It is well settled that an administrative body has only those powers that are expressly granted to it by statute. *E.g., People ex rel. Thompson v. Property Tax Appeal Board*, 22 Ill. App. 3d 316, 317 N.E.2d 121 (1974). Accordingly, I would hold that the PTAB lacked jurisdiction to consider whether the assessment scheme used by the Review Board was unconstitutional.

In addition, I question whether the circuit court should entertain such constitutional considerations in an administrative review of a PTAB decision. While it is true that the circuit court may consider a constitutional challenge to a statute on administrative review (*Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 644 N.E.2d 1166 (1994)), the plaintiffs in this case have not challenged the constitutionality of a statute. Although judicial review of administrative decisions is available in part to guard the constitutional rights of those who are subject to administrative action (*Murray v. Board of Review*, 237 Ill. App. 3d 792, 604 N.E.2d 1040 (1992)), judicial review of constitutional questions that were not properly before the administrative agency and that do not concern the agency's conduct is not appropriate. Accordingly, I would hold that administrative review is limited to questions concerning the constitutionality of the agency's actions and procedures. Here, the plaintiffs are not challenging the constitutionality of the PTAB's procedures or decision. They challenge instead the constitutionality of the mass appraisal system as imposed by the Pekin Township tax assessor. Such a challenge must be brought against Pekin Township in the circuit court to force township officials to assess property in the township at its fair cash value.

To recap, property must be assessed at its fair cash value and the PTAB's function is to determine whether the board of review has complied with this statutory requirement. In this case, the plaintiffs

agree that their property was assessed at its fair market value, and they have not claimed that the PTAB acted unconstitutionally in reviewing the assessment. Rather, the plaintiffs claim that the Review Board's assessment method is unconstitutional. This is not the type of claim that the PTAB may consider, nor is administrative review of the PTAB's decision the appropriate method to raise this challenge.