819 F.2d 1362
 Paul HAMER and June Hamer, Plaintiffs-Appellants,
v.
COUNTY OF LAKE, Lake County Board of Review, and its
individual members, and Robert G. Jasper,
Defendants-Appellees,
and
Appeal of Jack URETSKY and Marshall Patner.
 No. 86-2485.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 3, 1987.
Decided May 15, 1987.
Rehearing and Rehearing En Banc Denied Aug. 5, 1987.
 
 James C. Bakk, Sp. Asst. State's Atty., Lonchar & Nordigian, Waukegan, Ill., for defendants-appellees.
 Marshall Patner, pro se.
 Before WOOD, RIPPLE, and MANION, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 The plaintiffs, Paul and June Hamer, and their attorneys, Jack Uretsky and Marshall Patner, challenge the award of attorney's fees and expenses entered against them pursuant to 42 U.S.C. Sec. 1988 in this civil rights action for review of state tax assessment procedures. For the reasons stated below, we affirm in part, reverse in part and remand for further proceedings.
 
 
 2
 * In the interests of comity and federalism, district court jurisdiction over state tax matters is dependent upon a finding that the applicable state procedures of review do not satisfy the requirements of the Tax Injunction Act (28 U.S.C. Sec. 1341). Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); Fromm v. Rosewell, 771 F.2d 1089 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). The Tax Injunction Act requires state taxpayers to turn to state remedies for protection of their federal rights provided the state remedies are "plain, speedy and efficient."[1]
 
 
 3
 The plaintiffs brought suit in May 1978 under 42 U.S.C. Sec. 1983 challenging the adequacy of the Illinois tax assessment procedures on equal protection and due process grounds.[2] Specifically, the plaintiffs sought to prove that the state procedures, as applied in all Illinois counties except Cook County, failed to provide an adequate means for addressing disparities in property tax assessments.[3] About one year later, the Hamers filed another suit in district court, in which they were again named the representatives of a class of taxpayer plaintiffs, charging that Illinois taxpayers were entitled to interest on property taxes wrongfully collected by the State. See Hamer v. Anderson, 594 F.Supp. 561 (N.D.Ill.1984).
 
 
 4
 In 1981, the Supreme Court issued a decision severely limiting the scope of recovery under the Tax Injunction Act in a case which addressed the Illinois system of property tax assessment review as applied in Cook County. Rosewell v. LaSalle National Bank, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).[4] The Court in Rosewell narrowed the scope of federal review in tax assessment cases by exclusively focusing on the procedural adequacy of state remedies. With the proper procedures in place, the case holds, any possible violations of a substantive federal right are adequately protected because the federal issue can be heard in the state courts and possibly on review to the United States Supreme Court (28 U.S.C. Sec. 1257). The state remedy is thus considered "plain, speedy and efficient," if the state procedures do not "preclude presentation and consideration of federal rights." Id. at 514-15, 101 S.Ct. at 1230.
 
 
 5
 Therefore, in Rosewell the Court did not decide whether Illinois taxpayers were entitled to interest on their refunds, as the plaintiff asserted, because it found the argument raised a substantive federal right to a tax refund which could be adequately litigated in state court. Id. The Court instead addressed the procedural issue concerning alleged delays in the refund process. Although decided by a divided Court, the majority opinion held, "[t]here is no doubt that the Illinois refund procedure provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." Id. [quoting LaSalle National Bank v. Cook County, 57 Ill.2d 318, 324, 312 N.E.2d 252, 255-56 (1974).[5]
 
 
 6
 In response to the Rosewell decision, the plaintiffs filed a thirty-four page amended complaint which included allegations that the state procedural mechanism failed to provide an adequate means to raise objections to assessment disparities. For example, the plaintiffs referred to limitations on the right to discovery, the alleged absence of a standard of proof in administrative proceedings, delays in the system as applied in selected counties, as well as other alleged inadequacies. The case then proceeded through discovery for about two years until July 1983, when the plaintiff classes were certified. On October 4, 1983, the district court denied the defendants' motion to dismiss for failure to state a claim for relief. See Coleman v. McLaren, 572 F.Supp. 178 (N.D.Ill.1983). And also in October 1983, the district court granted the parties leave to continue to proceed with discovery on the limited issue of the court's jurisdiction over the claims under the Tax Injunction Act.
 
 
 7
 In March 1984, the district court, while ruling on objections to a magistrate's recommendation with respect to discovery, cautioned the plaintiffs that their claims were of questionable merit in light of Rosewell and a major decision issued the same year as Rosewell, Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), which also limited recovery in state tax assessment cases.[6] In McNary, the Court extended the "plain, speedy and efficient" test to cover suits seeking damages under Section 1983, not only injunctive relief. The next year, the Court also decided California v. Grace Brethren Church, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), which held that a state remedy may be "plain, speedy and efficient" despite the absence of state injunctive relief.
 
 
 8
 Next, on September 27, 1984, the district court issued its decision in the related case of Hamer v. Anderson, and held that the Illinois procedures, as applied in the same counties which were the subject of the present suit, were "plain, speedy and efficient." Hamer, 594 F.Supp. at 563. Following the Supreme Court's statement in Rosewell, 450 U.S. at 514, 101 S.Ct. at 1229, the district court also held that the right to interest on a tax refund addressed a substantive federal issue not subject to review under the Tax Injunction Act. Hamer, 594 F.Supp. at 564. In response to this decision, the defendants' counsel in this case wrote the plaintiffs' attorneys and suggested that the suit be dropped in light of the holding that the Illinois procedures satisfied the requirements of the Tax Injunction Act.[7] The plaintiffs' counsel flatly refused the defendants' suggestion.
 
 
 9
 In October 1985, the district court rejected the plaintiffs' claims challenging the alleged lack of assessment uniformity and found the state procedures of review to be "plain, speedy and efficient." The district court thus dismissed the case for lack of subject matter jurisdiction in a lengthy and well-reasoned opinion specifically addressing each alleged error in the Illinois procedures. The court found that the bulk of the complaint addressed alleged violations of substantive rights--a claim found inappropriate in Rosewell given the existence of adequate state review. The remaining procedural concerns were found to lack substantial factual merit or were alternatively held to be "plain, speedy and efficient." The district court decision was adopted as the opinion of this court on appeal. Coleman v. McLaren, 631 F.Supp. 749 (N.D.Ill.1985), aff'd, 796 F.2d 477 (7th Cir.1986) (unpublished order).
 
 
 10
 The government and other defendants then petitioned for $19,608.28 in attorney's fees and expenses pursuant to 42 U.S.C. Sec. 1988 to cover the costs incurred in litigating the suit after September 27, 1984, the date of the decision in Hamer v. Anderson.[8] The district court granted the motion after carefully reviewing the request, which it deemed in part to be excessive and in part overreaching. The court then limited the fees and expenses to $11,195.61.[9] The court reasoned that the Rosewell decision, followed by Hamer v. Anderson, provided clear and unambiguous precedent which rendered the plaintiffs' claims frivolous and unreasonable under Section 1988. The court stated that both decisions conclusively established that substantive federal claims of the sort pursued by the plaintiffs were not properly cognizable in federal court under the Tax Injunction Act. The decisions also disposed of any concerns over the procedural adequacy of the Illinois system of review. In addition, the court held that Hamer v. Anderson provided an appropriate point from which to assess fees given the prior decisions of the Supreme Court. Finally, the court ordered the grant of fees and expenses to be charged jointly and severally under Section 1988 against the Hamers and both their attorneys, Marshall Patner and Jack Uretsky.
 
 
 11
 On appeal, the plaintiffs do not dispute the reduced amount of the award, but rather claim: (1) that it was improper, as a matter of law, to grant attorney's fees to the "prevailing defendants" where a development in the law during the course of the litigation renders the litigation unreasonable, regardless of whether the award is limited to the fees incurred after the change in the law; and, alternatively, (2) that the district court abused its discretion in awarding attorney's fees under the present circumstances because the law was not sufficiently clear to render the plaintiffs' claims frivolous.[10]
 
 II
 
 12
 While prevailing plaintiffs are entitled to attorney's fees under 42 U.S.C. Sec. 1988 "if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit," Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), prevailing defendants must satisfy much more stringent standards to recover fees against plaintiffs in a civil rights action. The test set forth in Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), states that "a plaintiff should not be assessed the opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Id. at 422, 98 S.Ct. at 701; Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam); Coates v. Bechtel, 811 F.2d 1045, 1049 (7th Cir.1987); Vandenplas v. City of Muskego, 797 F.2d 425, 428 (7th Cir.1986). Christiansburg also held that defendants are not required to show either subjective or objective bad faith on the part of the plaintiffs to recover attorney's fees under Section 1988. 434 U.S. at 421, 98 S.Ct. at 700. It is sufficient if the plaintiff's claim is "meritless in the sense that it is groundless or without foundation." Hughes, 449 U.S. at 14, 101 S.Ct. at 178. Finally, it is well-settled that the district courts are given wide latitude to determine whether an award of fees to prevailing defendants is appropriate in a given case. Thus, the decision to impose attorney's fees is reviewed for an abuse of discretion. Muskego, 797 F.2d at 428.
 
 
 13
 The Christiansburg test is intended to strike a balance between the need to eliminate the possible "chilling effect" on civil rights plaintiffs, who may decide not to pursue a meritorious suit for fear of suffering a fee award, and the goal of deterring plaintiffs from filing frivolous claims. Coates, 811 F.2d at 1049-50; Eichman v. Linden & Sons, Inc., 752 F.2d 1246, 1248 (7th Cir.1985). In actual practice, however, a perfect balance is often difficult to achieve given the importance of both of these concerns and the inherent tension between them--an issue which is becoming more apparent as courts increasingly resort to sanctions in an effort to limit the amount of frivolous litigation. Under the circumstances, the Supreme Court's instructions with respect to this issue bear repeating:[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.
 
 
 14
 Christiansburg, 434 U.S. at 421-22, 98 S.Ct. at 700. For the benefit of the district courts, we would only add that their effort to control the amount of frivolous litigation must not lose sight of the dictates of Congress which call for an aggressive and creative attack by civil rights plaintiffs, the "private attorney generals," to vigorously pursue enforcement of our civil rights laws. Id. at 416, 98 S.Ct. at 697. It is often through vigorous advocacy that changes and developments in the law occur and new precedent is created. Innovative, even persistent advocacy in the face of great adversity must not be unreasonably penalized with hindsight. Subsequent failure is not the test. There is no time, however, for litigation that is clearly frivolous. When passing on possible frivolous advocacy, judges would do well to remember their own days of advocacy with all its attendant tribulations. The judicial and advocacy perspectives are not necessarily the same. In this case, however, Judge Shadur carefully and considerately developed the attorney's fee sanctions in model fashion. We find no fault whatsoever with his general approach.
 
 
 15
 Attorney's fees may be awarded to prevailing defendants under Christiansburg when plaintiffs pursue a claim which is frivolous in light of unambiguous case law, just as a fee award is appropriate when a suit is found to lack sufficient basis in fact. See, e.g., Hamilton v. Daley, 777 F.2d 1207, 1212-13 (7th Cir.1985); Werch v. City of Berlin, 673 F.2d 192, 195 (7th Cir.1982). For similar reasons, sanctions have been imposed under Fed.R.App.P. 38 when a party insists on litigating an issue in the face of controlling precedent. See, e.g., District No. 8 International Ass'n of Machinists & Aerospace Workers v. Clearing, 807 F.2d 618, 623 (7th Cir.1986); Reid v. United States, 715 F.2d 1148, 1154 (7th Cir.1983); Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1269-70 (7th Cir.1983). As this court stated in Hamilton, "it is the responsibility of counsel to know the law and to know whether a claim is clearly foreclosed by precedent." Hamilton, 777 F.2d at 1212. Given the difficulty of determining whether the case law in a given case is sufficiently clear so that it renders an argument frivolous, this court has carefully examined fee awards based on this theory. See, e.g., LeBeau v. Libbey-Owens-Ford Co., 799 F.2d 1152, 1163 (7th Cir.1986); Vandenplas, 797 F.2d at 430.
 
 
 16
 The plaintiffs assert that the district court erred by imposing fees in this case because it was only after the suit was filed that certain legal developments clarified the state of the law. Thus, they argue, the reasonableness of the claim may only be determined with respect to the state of the law as it existed at the outset of the litigation.[11] The plaintiffs concede, as they must, that factual developments arising during the course of the litigation can render a suit frivolous and thus justify an award of fees in the event the plaintiff proceeds with the case. The plain wording of Christiansburg, directing that an award of fees is appropriate where the claim is frivolous or when "the plaintiff continued to litigate after it clearly became so," clearly requires as much. Christiansburg, 434 U.S. at 422, 98 S.Ct. at 701; see also Coates, 811 F.2d at 1053; Hermes v. Hein, 742 F.2d 350, 357 (7th Cir.1984); Ford v. Temple Hospital, 790 F.2d 342, 350 (3d Cir.1986).
 
 
 17
 However, the plaintiffs claim that a similar rule with respect to legal developments is distinguishable. Although there may be some surface appeal to a fact/law distinction, the argument quickly loses its appeal in view of the fact that an award of fees is only permitted when litigation proceeds in the face of controlling and unambiguous precedent. All reasonable doubts regarding the merits of the claim are resolved in favor of the plaintiff. In addition, because the award of fees under these circumstances is limited to the costs incurred after the point at which it became unreasonable to pursue the suit, the plaintiffs' argument is not persuasive in light of the otherwise indistinguishable cases which have upheld fee awards when the legal frivolity was apparent from the outset of the suit. See, e.g., Hamilton, 777 F.2d at 1213. Therefore, the plaintiff's first argument is without merit.[12]
 
 
 18
 In the alternative, the plaintiffs assert that the district court abused its discretion in finding that the intervening law at issue in the present case was so clear and controlling that the plaintiffs' insistence on pursuing their claims was unreasonable. Thus, we turn to the question whether the plaintiffs presented any reasonable arguments challenging deficiencies in the state procedures themselves rather than arguing substantive federal issues which we agree were clearly frivolous. The plaintiffs raise the following specific procedural objections which they claim were not well-settled by the prior case law.
 
 
 19
 The plaintiffs first argue that the Illinois scheme is not "plain" because of uncertainty involving the availability of discovery in tax objector cases. It is apparently the policy of certain circuit courts not to permit discovery in tax objection proceedings. Coleman, 631 F.Supp. at 756 n. 16. The district court stated that the argument, in effect, focused on a substantive federal right to discovery, not on the adequacy of the state procedures to allow a tax objector to raise the issue, framed as a due process right, in state court. However, it would appear that the question at least arguably implicates certain procedural protections. This is true if the issue is stated in the terms highlighted by Rosewell, that is, whether the lack of discovery is a procedural defect in the Illinois remedy which "would preclude presentation and consideration of [plaintiffs'] federal rights." Rosewell, 450 U.S. at 514-15, 101 S.Ct. at 1230. Here, presumably, it is the alleged constraint on the development of the factual basis for a possible federal claim which may preclude consideration of the federal right. In addition, it is an issue which was not addressed in either Hamer v. Anderson or Rosewell. Thus, we cannot agree that this allegation was frivolous or unreasonable.
 
 
 20
 Next, the plaintiffs claim that the procedures are not "speedy" as evidenced by a seventeen year delay the Hamers experienced before obtaining a tax refund from an objection filed in 1961. Coleman, 631 F.Supp. at 758 n. 20. However, it is quite clear that the "speediness" issue was directly addressed and rejected in both Hamer, 594 F.Supp. at 563, and Rosewell, 450 U.S. at 520-21, 101 S.Ct. at 1232-33. Thus the claim is frivolous.
 
 
 21
 Last, the plaintiffs assert that the Illinois procedures are not "efficient" for two reasons. First, the plaintiffs state that the Board presumes that the Township Assessor's valuation is correct and therefore that the assessor does not consider a taxpayer's evidence of disparities or other evidence unless it supports the county's assessment. The district court found that this assertion was simply not supported by the evidence. Coleman, 631 F.Supp. at 760. The procedures published by the Lake County Board ("Board of Review Suggestions to Assist the Taxpayer") provide that a taxpayer may introduce evidence comparing the assessment of one's property with a lower assessment of similar property. In addition, the district court notes that the plaintiffs' claim is contradicted by their own evidence submitted in a class member's case in which the Board stated that it would consider evidence of comparable property assessments. The district court found that the Board considered the disputed evidence but simply found it was not persuasive. Given the clear lack of evidence indicating that it was the general policy of the county to ignore the disputed data, the district court did not abuse its discretion in finding the claim to be frivolous.
 
 
 22
 However, a more difficult question is presented by the second objection to the efficiency of the procedures. The plaintiffs argue that the Board's failure to articulate a "set standard" of proof for judging complaints renders the hearing "meaningless" and thus inefficient according to the definition stated in Rosewell, 450 U.S. at 518, 101 S.Ct. at 1231 (remedy which "imposes no unusual hardship on respondent requiring ineffectual activity or an unnecessary expenditure of time or energy" is efficient). The issue is more troubling because the evidence indicates that the Board does not, in fact, apply a "set standard" of proof. The district court correctly held that the failure to articulate a standard does not render the proceeding "meaningless" provided the Board fairly considers all the evidence submitted. Coleman, 631 F.Supp. at 760. However, that is not to say that the plaintiffs' argument was frivolous as a result. Again, it would appear that the question arguably implicates the sort of procedural protections which might preclude consideration of other federal rights. One can at least reasonably assert that an issue concerning the standard of proof presents a question of procedural significance affecting the ability to adequately develop a federal claim under the state system of review. Of course, there are serious problems with this argument, not the least of which is the existence of administrative review on appeal to the PTAB, or, alternatively, of de novo review in the circuit court if a taxpayer decides to file a tax objection in response to the county's application for judgment. Nonetheless, it is not appropriate to characterize the argument as unreasonable.
 
 
 23
 The fact that we find two of the plaintiffs' claims not to be frivolous does not, however, end the inquiry. In Hill v. Norfolk and Western Railway Co., 814 F.2d 1192, 1200 (7th Cir.1987), a decision discussing the issue of attorney's fees awarded as a sanction imposed under Fed.R.App.P. 38, this court held that it is appropriate under certain circumstances to award fees despite the presence of at least one reasonable claim. The court stated: "[i]t would be strange if by the happenstance of including one colorable (though losing) claim amidst an ocean of frivolous ones, a litigant could ward off sanctions." Hill, at 1200; see also District No. 8, 807 F.2d at 623. This approach is as applicable with respect to an award of attorney's fees under Section 1988 as it is in Rule 38 sanction cases. However, as a general rule, it is important to stress that reviewing courts are hesitant to impose a requirement on the lower courts and litigants which would lead to the need to distinguish between frivolous and nonfrivolous claims in every case. See Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1168 (7th Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); Quiros v. Hernandez Colon, 800 F.2d 1, 2 (1st Cir.1986).[13] 3] Therefore, we must decide whether the case before us falls within the exception for claims which are colorable but are raised "amidst an ocean of frivolous ones" or whether the general rule against such an approach should apply.
 
 
 24
 Here, as in Hill, there is little doubt that the plaintiffs' suit lacks the necessary force to stave off an award of attorney's fees. The plaintiffs' complaint clearly focused on the substantive concern that assessment disparities tend to disproportionately impact certain taxpayers in certain districts. On appeal, the plaintiffs made a valiant effort but were only able to identify two procedural issues of any possible merit. However, these issues were essentially lost among thirty-four pages of allegations raised in their complaint challenging the substantive right to correction of the disparities.[14] And only the discovery issue specifically related to the question of assessment disparities. Moreover, the plaintiffs were cautioned by both the district court and their opponents with respect to the validity of their claims, and we urge and applaud such efforts to monitor the course of litigation. See Coates, 811 F.2d at 1053 ["careful judicial oversight during discovery will encourage 'the abandonment of claims that become hopeless' without discouraging 'the nonfrivolous filing of civil rights suits' " (quoting Hermes, 742 F.2d at 358) ]. Therefore, because of the largely disproportionate time and expense the defendants have had to devote to defending against the frivolous aspects of the plaintiffs' claims, it is clear that an award of attorney's fees is appropriate.
 
 
 25
 In addition to imposing attorney's fees and expenses against the plaintiffs, the district court also imposed fees against their attorneys pursuant to Section 1988. However, Section 1988 only authorizes the imposition of fees against parties to the litigation, not their attorneys. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 761, 100 S.Ct. 2455, 2461, 65 L.Ed.2d 488 (1980); Oliveri v. Thompson, 803 F.2d 1265, 1272 (1st Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Therefore, although we find that the district court was justified in imposing attorney's fees against the plaintiffs, we vacate as much of the decision as imposes fees against the plaintiffs' attorneys. Without expressing any opinion with respect to the liability of the plaintiffs' attorneys, we remand to allow the district court to consider alternative theories of liability.[15] And, because the district court clearly contemplated imposing attorney's fees according to a "package plan" (by referring to joint and several liability), we also remand to allow the court to restructure its order in light of this decision.
 
 III
 
 26
 For the foregoing reasons, we affirm that portion of the district court's decision which imposes attorney's fees and expenses against the plaintiffs under Section 1988 and we vacate and remand for further consideration with respect to counsels' possible liability and for any resulting adjustment required in the district court's overall plan for imposing fees and expenses. In considering the amount of fees to be imposed some reasonable consideration should be given to the fact that not all the plaintiffs' claims were frivolous, although no "fine tuning" need be attempted. Quiros, 800 F.2d at 2.
 
 
 27
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 The Tax Injunction Act (28 U.S.C. Sec. 1341) provides:
 The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 [2]
 The plaintiffs' suit was certified as a class action under Fed.R.Civ.P. 23. Coleman v. McLaren, 98 F.R.D. 638 (N.D.Ill.1983). The two plaintiff classes included all overassessed Lake County and DuPage County taxpayers; the Hamers were named as representatives of the class of Lake County taxpayers. When the defendants moved for an award of attorney's fees, they sought to recover against the Hamers specifically (and their attorneys) rather than against the entire class, thus accounting for the change in the caption to Hamer v. County of Lake, No. 86-2485. We do not address the implications of assessing attorney's fees against the class representatives alone because that issue was not raised for our consideration. Cf. Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 86 F.R.D. 500, 503-04 (N.D.Cal.1980)
 
 
 [3]
 This argument stems from language in the Illinois Constitution, Art. IX, Sec. 4, which sets forth the requirement of tax uniformity. See People ex rel. Hawthorne v. Bartlow, 111 Ill.App.3d 513, 67 Ill.Dec. 243, 444 N.E.2d 282 (4th Dist.1983); Stephens v. State Property Tax Appeal Board, 42 Ill.App.3d 550, 1 Ill.Dec. 229, 356 N.E.2d 355 (4th Dist.1976). Thus, Illinois law provides that the assessed valuation of real estate must be uniform across taxing district lines. Ill.Rev.Stat. ch. 120, para. 589.1 (1985). The plaintiffs asserted that the local county assessments failed to comply with this uniformity requirement and instead resulted in wide variations in "assessment ratios" (the ratio of the assessed value of real estate to its market value)
 
 
 [4]
 See Ganz, Laswell, Review of Real Estate Assessments--Cook County (Chicago) v. Remainder of Illinois, 11 John Marshall J. Prac. & Proc. 19, 74-77 (1977), for a detailed comparison of the procedures applied in Cook County versus the State's other counties
 
 
 [5]
 Justice Blackmun, who cast the deciding vote in Rosewell, stated in his concurring opinion that "[t]he Court's opinion demonstrates, I think, that the remedy provided by Illinois law qualifies, though perhaps only barely, as 'plain, speedy and efficient,' within the meaning of the Tax Injunction Act, and that federal jurisdiction to grant injunctive relief is therefore statutorily barred." Rosewell, 450 U.S. at 529, 101 S.Ct. at 1237. Given the Court's divided opinion with respect to the adequacy of Illinois procedures and the reservations expressed in Justice Blackmun's deciding vote, we do not believe that the plaintiffs' specific objections to the Illinois procedures were wholly unreasonable prior to the Hamer v. Anderson decision
 
 
 [6]
 At the district court hearing, Judge Shadur stated, in part:
 But, counsel, if it becomes plain that you are kicking a horse that is not dead, is moribund, then it seems to me you ought to give some hard thought to whether constructive purposes are being served by the further thrashing around of these issues.
 You know, I am not speaking to that one because I don't know what the facts are on the current status. All I am telling you is that if it turns out to be as advertised, there is a serious problem with staying in this court.
 Discovery Trans., at 6-8 (March 19, 1984).
 
 
 [7]
 The defendants' letter, dated October 18, 1984, was sent to Jack Uretsky, Marshall Patner, Ronald Futterman, and Jeffrey Lerner, the four attorneys representing all the Coleman class members. Mr. Uretsky and Mr. Patner represented the Lake County class of taxpayers. Mr. Uretsky represented the same class of plaintiffs in Hamer v. Anderson as well. The letter set forth the defendants' position that the plaintiffs' claims were "unreasonable, vexatious, and frivolous" and warned of the possibility of recovering an attorney's fees award
 
 
 [8]
 The defendants sought to recover fees under Section 1988 against either the Hamers, their lawyers, or both the Hamers and their lawyers
 
 
 [9]
 The total time allowed (131 hours) was 48.4 hours less than the defendants requested. And the requested hourly rate of $125.00 for the services of the State's attorneys was reduced to $85.00 per hour. The defendants do not cross-appeal from this decision. Nor do the defendants appeal from the court's decision not to address the possible res judicata effect of the Hamer v. Anderson decision
 
 
 [10]
 Before proceeding to discuss the merits of these arguments, it is necessary to provide a brief review of the procedures which were at issue in this case. The tax assessment process in Illinois begins when the township assessor appraises the value of a taxpayer's real estate. See Ill.Rev.Stat. ch. 120, para. 524 (1985). Pursuant to Paragraph 584, each property owner is then issued a notice stating, among other things, the median level of assessment in the relevant district and informing the taxpayer of the right to appeal the assessment to the County Board of Review ("Board"). If the taxpayer decides to challenge the assessment, he or she must file a complaint with the Board (Paragraph 589), which will then hold a hearing and issue written notice of its decision. If the taxpayer then wishes to challenge the Board's decision he or she may either appeal to the Illinois Property Tax Appeal Board ("PTAB"), under Paragraph 592.1, or pay the tax under protest and then file a tax objection when the County Collector files an application for judgment in the circuit court (Paragraphs 675, 716). An adverse PTAB decision may be appealed to the circuit court (Paragraph 592.4) and then, if necessary, through the Illinois appellate courts. See Ill.Rev.Stat. ch. 110, para. 3-112. Similarly, the taxpayer may seek review in the Illinois appellate courts from an adverse judgment in the circuit court on a tax objection to the County Collector's application for judgment. Finally, review in the United States Supreme Court is available by writ of error from the state courts. 28 U.S.C. Sec. 1257; Pennsylvania v. Ritchie, --- U.S. ----, 107 S.Ct. 989, 992, 94 L.Ed.2d 40 (1987)
 
 
 [11]
 The plaintiffs assign great weight to a decision of the Fifth Circuit, Holloway v. Walker, 784 F.2d 1294 (5th Cir.) (per curiam), cert. denied, --- U.S. ----, 107 S.Ct. 571, 93 L.Ed.2d 576 (1986), which upheld the denial of the defendant's attorney's fees and states that the "[e]volution of the law during the pendency of litigation is an insufficient basis for a claim of frivolity." Id. at 1296. However, it is clear that the language quoted from Holloway is taken out of context. The defendant in Holloway, a judge sued in his official capacity apparently for injunctive relief, did not present a request for fees incurred after the relevant development in the law, see Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), but sought to recover fees for costs incurred from the outset of the litigation
 
 
 [12]
 The decision to award attorney's fees as a result of an intervening development in the law is not without some precedent. Under similar circumstances, the Fourth Circuit in Hutcherson v. Board of Supervisors of Franklin County, 742 F.2d 142 (4th Cir.1984), cert. denied, 470 U.S. 1004, 105 S.Ct. 1358, 84 L.Ed.2d 380 (1985), upheld an award of attorney's fees to the defendants where the plaintiffs sought injunctive and declaratory relief for alleged discrimination against county residents with respect to the taxing system. Referring to the intervening decision in Grace Brethren Church, 457 U.S. at 417, 102 S.Ct. at 2512, the court stated: "[i]n light of the settled principle of law existing before the filing of this action and handed down during the action, all before the hearing in the district court [but after the plaintiffs amended their complaint in response to the decision in Grace Brethren Church ], we conclude that plaintiffs' suit is meritless within the meaning of Christiansburg Garment Co., in that it is unreasonable or groundless and that the plaintiffs continued to litigate after it clearly became so." Hutcherson, 742 F.2d at 146 (citation omitted)
 
 
 [13]
 In Miller Brewing, 739 F.2d at 1168, this court declined to award attorney's fees under its "inherent power" and stated:
 The company's resistance to the arbitrator's finding that it violated the preference clause may have been frivolous; but we doubt whether it would be worthwhile, at least as a general rule, to divide a suitor's claims (or defenses) into frivolous and nonfrivolous, and award attorney's fees in respect to frivolous claims but not the others. The added burden to the court of making this determination would often outweigh the benefit to the party of obtaining a partial award of attorney's fees. Although it is costly to defend against a frivolous suit, the marginal costs of knocking out the frivolous claims in a suit that has a meritorious core usually are not great.
 
 
 [14]
 Of course, we realize that it only takes one claim of merit in order for a suit to prove to be successful. And surely we do not mean to imply that civil rights plaintiffs should be penalized for pursuing a multi-pronged attack on a given issue. However, when it is evident that selected claims have proven to be meritless over the course of the litigation, it is unreasonable for plaintiffs to expect the defendants to shoulder the costs of litigating the claims. Here, it is quite clear that the plaintiffs focused almost entirely on the substantive federal claims throughout the litigation. In fact, the same is largely true of the plaintiffs' arguments on appeal
 
 
 [15]
 We note that a court may impose attorney's fees under its "inherent power," provided the attorney "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," F.D. Rich Co. v. United States, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc., 809 F.2d 451, 455-56 (7th Cir.1987), or under Fed.R.Civ.P. 11 when an attorney's arguments are objectively unreasonable at the time they are advanced. Id. at 453. However, as opposed to the "bad faith" exception, Rule 11 does not impose a continuing obligation on attorneys to reevaluate the merits of the case as the litigation develops. Id. at 455; Oliveri, 803 F.2d at 1274; contra Thomas v. Capital Security Services, 812 F.2d 984 (5th Cir.1987); Robinson v. National Cash Register Co., 808 F.2d 1119, 1127 (5th Cir.1987). Therefore, liability under Rule 11 is improper here based on the allegations contained in the plaintiffs' amended complaint because the arguments were not objectively unreasonable until after Hamer v. Anderson had been decided. Of course, liability for attorney's fees can be based on pleadings advocating an unreasonable position after the Hamer v. Anderson decision. And attorney's fees can be recovered under 28 U.S.C. Sec. 1927 provided an attorney "multiplies the proceedings in any case unreasonably and vexatiously." Westinghouse Electric Corp. v. NLRB, 809 F.2d 419, 425 (7th Cir.1987); In re TCI Ltd., 769 F.2d 441, 445-47 (7th Cir.1985)