Carl **MUNSON**, Plaintiff–Appellant,

v.

**MILWAUKEE BOARD OF SCHOOL DIRECTORS, Raymond E. Williams, Assistant Superintendent and Robert Long, Assistant Superintendent, Defendants–Appellees.**

No. 91–1917.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1992.

Decided July 16, 1992.

John D. Uelmen, Fair Employment Legal Services, Milwaukee, Wis. (argued), for plaintiff-appellant.

Grant F. Langley, Stuart S. Mukamal (argued), Milwaukee, Wis., for defendants-appellees.

Before BAUER, Chief Judge, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Carl Munson alleged in his complaint filed in the district court that the Milwaukee Board of School Directors ("MBSD" or "the Board") and two of its assistant superintendents coerced his resignation as an MBSD principal and denied him reemployment as a teacher in retaliation for his involvement with the Administrators and Supervisors Council ("ASC"), an MBSD employee organization. Munson

sued the MBSD and the two superintendents pursuant to 42 U.S.C. § 1983, alleging that their actions violated his freedom of speech and freedom of association rights under the first and fourteenth amendments of the United States Constitution. Munson also brought three state law claims against the defendants (defamation, invasion of privacy, and wrongful discharge), alleging that they arose from the same course of conduct; the district court exercised pendent jurisdiction over these claims.[1] The defendants counterclaimed, arguing that Munson's complaint was frivolous, and contending that they were entitled to attorneys' fees under 42 U.S.C. § 1988 and Wis. Stat.Ann. §§ 814.025 and 895.50(6) (West 1991). The district court entered summary judgment against the plaintiff in the principal action and on the counterclaim and awarded the defendants $6,575 in attorneys' fees on the counterclaim. On appeal, Munson challenges only the district court's award of attorneys' fees to the defendants. We affirm.

## I.

Carl Munson began employment with the Milwaukee Public Schools in 1967. On February 7, 1978, Munson was named an acting assistant principal, subjecting him to the MBSD residency requirement. The residency policy, in place since July 1, 1977, required that certain Milwaukee public school administrators, supervisors and employees maintain their *bona fide* residence in the City of Milwaukee. Under MBSD policy, violation of the residency requirement may result in the discharge of the offending employee. At the time of his promotion to acting assistant principal, Munson was living outside of the Milwaukee City limits in Brookfield, Wisconsin, but advised MBSD officials that he would take steps to comply with the residency requirement.

In 1985, the year he was promoted to principal, Munson became president of the ASC, the organization which represents administrative and supervisory employees in their employment bargaining with the MBSD. As president, Munson served as a member of the ASC negotiating team for the 1986–88 ASC/MBSD contract. During these negotiations, the ASC unsuccessfully bargained for the elimination of the residency requirement.

In August of 1986, MBSD officials began to investigate employees suspected of being the worst offenders of the residency requirement. From September 1986 through January 1987, two School Board Department of School Safety aides conducted residency investigations of Munson and four other MBSD administrative employees. The results of a search of numerous public records reflected that Munson was residing in Brookfield, Waukesha County, Wisconsin, not in the City or County of Milwaukee: Munson filed pleadings in a state circuit court listing a Brookfield home address; one of Munson's two cars was registered to a Brookfield address; Munson's credit report listed two addresses, both outside Milwaukee; and Munson's real estate broker's license listed a Brookfield address. Their suspicions heightened, the school safety aides commenced periodic surveillance of Munson's morning and afternoon commuting patterns, as well as of his Brookfield residence and his alleged Milwaukee rental address. Observations made during this surveillance, coupled with the public records evidence, persuaded MBSD officials that Munson resided in Brookfield, Waukesha County, Wisconsin, and that he was fraudulently claiming the City of Milwaukee rental address as his residence.

MBSD officials notified Munson of the investigators' findings, and told him that he could be dismissed if the residency information proved to be true. A conference

---

**1.** When a federal district court exercises jurisdiction over state law claims which are so related to a claim over which the court has original jurisdiction that the federal and state claims form part of the same case or controversy under Article III of the United States Constitution, the court is now said to be exercising "supplemental" jurisdiction over the state claim, pursuant to 28 U.S.C. § 1367. However, in this opinion, we will, like the district court, refer to Munson's state claims as "pendent" to his federal claim.

was scheduled with MBSD officials for February 6, 1987. Munson appeared at the conference represented by the ASC executive director and an attorney. Copies of the surveillance and investigation reports were furnished to Munson, but he insisted that he was not in violation of the residency requirement. MBSD officials, unpersuaded by the denials, recommended to the superintendent of schools that Munson be terminated for failing to reside within the City of Milwaukee. Munson was informed that he could appeal any adverse decision made by the superintendent to the full Board of School Directors. On February 20, 1987, before the superintendent had acted on the termination recommendation, Munson wrote the MBSD stating that he wished to resign effective June 17, 1987. Munson's resignation letter was received and accepted by assistant superintendent Raymond E. Williams. Munson attempted to "withdraw" his resignation on May 29, 1987, but the MBSD refused his request, and the resignation became effective on the date Munson originally requested.

In late 1987 and early 1988, Munson unsuccessfully sought reemployment with the MBSD as a teacher. His application listed a Brookfield home address. In February 1988, Munson filed a complaint with the Wisconsin Employment Relations Commission arising from the circumstances leading to his resignation. The complaint was dismissed for want of jurisdiction because the ASC was not a "labor organization" nor was Munson considered a municipal employee within the meaning of the Municipal Employment Relations Act, Wis.Stat. § 111.70 *et seq.*, under which he had sought relief. On February 6, 1989, Munson filed his complaint in this action.

## II.

### A.

■ Title 42, U.S.C. § 1988(b) provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of ... [42 U.S.C. § 1983] ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court has held that a prevailing defendant may recover attorneys' fees under § 1988 if the plaintiff's action is "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978)); *see also Leffler v. Meer,* 936 F.2d 981, 986 (7th Cir.1991). Defendants are not required to show either subjective or objective bad faith on the part of the plaintiff in order to recover § 1988 attorneys' fees. *Hamer v. County of Lake,* 819 F.2d 1362, 1366 (7th Cir.1987) (citation omitted). Instead, the defendant must demonstrate that the plaintiff's action is "meritless in the sense that it is groundless or without foundation." *Hughes,* 449 U.S. at 14, 101 S.Ct. at 178. "[W]hen a civil rights suit is lacking in any legal or factual basis ..., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation." *Coates v. Bechtel,* 811 F.2d 1045, 1050 (7th Cir.1987) (citation omitted).

■ Our role in reviewing § 1988 fee awards is sharply limited. "[I]t is well-settled that the district courts are given wide latitude to determine whether an award of fees to prevailing defendants is appropriate in a given case." *Hamer,* 819 F.2d at 1366. We will reverse a decision to award fees to a prevailing defendant pursuant to § 1988 only upon a showing of abuse of discretion by the district court. *Vandenplas v. City of Muskego,* 797 F.2d 425, 429 (7th Cir.1986); *Leffler,* 936 F.2d at 984; *Coates,* 811 F.2d at 1050. "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Vandenplas,* 797 F.2d at 429 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). "An abuse of discretion warranting reversal occurs only when

no reasonable person could take the view adopted by the trial court." *Vandenplas*, 797 F.2d at 429 (citation omitted); *Leffler*, 936 F.2d at 984.

### B.

In the instant case, the district court awarded attorneys' fees to the defendants, finding Munson's amended complaint "without foundation, and therefore frivolous." The court concluded that Munson presented "no factual or evidentiary basis" for the central contention undergirding his lawsuit: that the MBSD forced him to resign because of his ASC activities. Munson agrees that in order to substantiate his § 1983 claim he was required to provide a basis for his assertion that the MBSD actions which led to his resignation were motivated, at least in part, by his ASC activities. Mere speculation is not enough to meet this burden.

After completing discovery, the only support Munson could offer on behalf of his claim that the MBSD acted with an unconstitutional motive were the following four allegations: (1) John Peterburs, the MBSD Secretary/Business Manager, was involved in the contract negotiations with the ASC and in the investigation of Munson's residency status; (2) the residency investigation was launched when Munson was bargaining for the elimination of the residency requirement in his capacity as ASC president; (3) Munson was the only ASC employee forced to resign because of a residency requirement violation; and (4) the MBSD was aware of rumors concerning Munson's residency status but only chose to pursue them once Munson became active in the ASC.

We are of the opinion that these four assertions fall short of providing a basis for Munson's lawsuit. The MBSD concedes points one and two above, but correctly responds that they do not provide any basis for concluding that the residency investigation was motivated by Munson's ASC activities. Munson's third point is that he was the only ASC employee forced to resign for a residency requirement violation, but this does not provide support for

his claim that the MBSD acted with an improper motive. The fact is that the MBSD simultaneously investigated the residency status of four other ASC employees in addition to Munson. In three of these cases, the Board concluded that there was insufficient evidence to support disciplinary action. One employee, however, was terminated for a residency violation but successfully contested the MBSD action through the grievance/arbitration procedure provided for in the ASC/MBSD contract, a recourse Munson waived when he submitted his resignation. Thus, from our review of the record we are convinced that it is barren of any evidence supporting Munson's theory that he was singled out by the MBSD. As to Munson's final point, the MBSD maintains that, although rumors about Munson's residency status had been circulating for years, they were never pursued because they lacked substantiation. Munson failed to present evidence to the contrary.

In sum, Munson has offered no factual basis to support his allegation that the MBSD actions with respect to his residency status were taken in retaliation for his ASC activities. No record evidence contradicts the MBSD's assertion that its actions in Munson's case were motivated simply by a desire to enforce its residency policy. As the district court stated, Munson's § 1983 action amounted to nothing more than "speculation as to the defendants' motives." Speculation alone is insufficient to support a lawsuit. In § 1988 actions, a "fee award is appropriate when a suit is found to lack sufficient basis in fact." *Hamer*, 819 F.2d at 1367. Munson's suit had no basis in fact. Thus, the district court did not abuse its discretion in finding that Munson's § 1983 suit was frivolous and warranted an award of attorneys' fees to the defendants.

### C.

The trial court applied its finding of frivolousness to Munson's pendent Wisconsin state law claims as well, and awarded the defendants attorneys' fees for the expenses incurred in defending against them

in addition to the fee award for the time and work expended on the § 1983 claim. An examination of the pendent claims leads us to conclude that the district court did not abuse its discretion in applying its § 1988 holding to them as well. Munson charged that the defendants defamed him by spreading rumors that he was in violation of the MBSD residency requirement. In Wisconsin, a plaintiff bringing a defamation claim must demonstrate that the defendant (1) made an unprivileged communication (2) of a false statement (3) to a person other than the one defamed and (4) that the communication was such that it tends to harm one's reputation so as to lower him in the estimation of the community or to deter others from associating or dealing with him. *Stoll v. Adriansen*, 122 Wis.2d 503, 362 N.W.2d 182, 190 (Ct.App. 1984). Truth is an absolute defense to defamation actions. *Denny v. Mertz*, 106 Wis.2d 636, 318 N.W.2d 141, 144, *cert. denied*, 459 U.S. 883, 103 S.Ct. 179, 74 L.Ed.2d 147 (1982). Munson had no basis for his assertion that the allegedly defamatory statement was false; in fact, overwhelming record evidence indicates that it was true. The defamation claim was frivolous.

█ Munson's second pendent claim was that the defendants invaded his privacy by placing him under surveillance. In Wisconsin, invasion of privacy means "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." Wis.Stat.Ann. § 895.50(2)(a) (West 1991). As the district court found, Munson neither pleaded nor advanced evidence of a legitimate expectation of privacy violated by the defendants' investigation. The MBSD safety aids who conducted the surveillance never trespassed onto Munson's private property and operated only from areas designated as public streets or highways. We are convinced that this claim was also frivolous.

█ Munson's final pendent claim was that he was wrongfully discharged. In Wisconsin, an employee is wrongfully dis-

charged when he is discharged for refusing to comply with an employer's request that he violate a public policy. *Jensen v. Christensen & Lee Insurance, Inc.*, 157 Wis.2d 758, 460 N.W.2d 441, 444 (Ct.App.1990). The defendants recommended that Munson be terminated because he had violated the MBSD residency requirement, not because he refused to violate a public policy. Since, as discussed above, Munson provided no basis for questioning the MBSD's motives, this claim was frivolous as well.

### III.

Munson also contends on appeal that the district court's award of attorneys' fees was excessive. He advances two arguments in support of this assertion. First, he contends that the district court was required to determine when in the litigation Munson should reasonably have known that his claim was frivolous, and awarded fees to the defendants only for work performed after that moment. It is possible for an initially nonfrivolous action to become frivolous when, for example, the factual basis supporting the complaint is shown to be groundless during discovery. *See Hermes v. Hein*, 742 F.2d 350, 358 (7th Cir.1984). In the instant case, Munson's complaint was frivolous *ab initio*. Munson never had a factual basis to support his claim concerning the defendant's alleged improper motives; the emptiness of his contentions was laid bare during discovery.

█ Munson makes a second argument that the fee award was excessive. He claims that the district court should not have awarded fees under 42 U.S.C. § 1988 to the defendants for work done on the pendent state claims because § 1988 only authorizes fee awards for work done on federal civil rights claims. We disagree. In *Zabkowicz v. West Bend Co., Div. of Dart Industries, Inc.*, 789 F.2d 540 (7th Cir.1986), the plaintiff had prevailed in the district court in an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On appeal, the plaintiff argued that, under the fee award

provision of 42 U.S.C. § 2000e–5(k),[2] she was entitled to compensation for all the time she spent prosecuting the case, including the hours spent on non-Title VII pendent state law claims eventually which were dismissed. *Id.* at 550. In holding that the plaintiff was entitled to compensation for time spent on these claims, we relied on the reasoning of *Hensley,* where the Supreme Court held that a plaintiff may be entitled to recover for time spent on unsuccessful civil rights claims if they share with the civil rights claims upon which the plaintiff prevailed a "common core of facts" or are "based on related legal theories." 461 U.S. at 435, 103 S.Ct. at 1940. In *Zabkowicz,* we stated that denying the prevailing plaintiff compensation for work done on unsuccessful pendent state law claims in a civil rights action, even if the pendent claims were not directly compensable under a fee-shifting statute,[3] would be "contrary to the precepts established in *Hensley* ... because it [would fail] to consider the interrelated nature of the lawsuit as a whole." 789 F.2d at 551 (citation omitted). "Where several claims arise out of a common factual core or are based on related legal theories, separating out the legal services rendered with respect to these overlapping claims would be an exercise in futility." *Id.* (citation omitted). This same reasoning is applicable to a prevailing *defendant* in a § 1988 fee award case. If a plaintiff can be awarded fees for work done on an *unsuccessful* pendent state claim which is factually or legally related to a successful civil rights claim, then defendants likewise should be entitled to fee awards for defending frivolous pendent claims factually or legally related to frivolous civil rights claims. Separating out the legal services rendered for the federal and pendent claims would be futile in both circumstances. This treatment of pendent state claims is consistent with cases in other circuits holding that when a plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial, although unsuccessful, federal claim, fees may be awarded under § 1988. *Carreras v. City of Anaheim,* 768 F.2d 1039, 1050 (9th Cir.1985); *Lund v. Affleck,* 587 F.2d 75, 76–77 (1st Cir.1978). When the federal and pendent claims are factually or legally related, they should be treated as one action for purposes of § 1988 fee awards.

■■■ In determining whether claims are related or unrelated, it is useful to "focus on whether the claims seek relief for essentially the same course of conduct." *Zabkowicz,* 789 F.2d at 551. (citation omitted). In the instant case, the three pendent state law claims arose out of the same course of conduct as the plaintiff's § 1983 action. The defendants' actions in conducting the residency investigation and in recommending the plaintiff's termination gave rise not only to the plaintiff's § 1983 claim, but also to the invasion of privacy, defamation and wrongful discharge claims. Thus, the district court properly awarded the defendants attorneys' fees under § 1988 for work performed defending the frivolous pendent state claims.

## IV.

Federal trial judges are called upon to manage notoriously crowded dockets. For them, time spent sifting through frivolous claims is time not spent considering valid claims. We agree with the trial judge that

---

**2.** The Supreme Court has made clear that all statutes in which Congress has authorized an award of fees to a "prevailing party," including 42 U.S.C. §§ 2000e–5(k) and 1988, are to be interpreted according to the same general standards. *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7. Thus, the reasoning in *Zabkowicz* applies to the instant case.

**3.** We note that in the instant case Wisconsin law provided a basis for awarding the defendants fees or costs for the frivolous pendent claims. *See* Wis.Stat.Ann. § 814.025 (West 1991) (autho-

rizing awards of attorneys' fees and costs to defendants for frivolous civil claims) and Wis. Stat.Ann. § 895.50(6) (West 1991) (specifically authorizing awards of attorneys' fees and costs for frivolous invasion of privacy claims). The defendants' counterclaim and its brief in support of its summary judgment motion requested fee awards under both state statutes, as well as under 42 U.S.C. § 1988. The district court order, however, cited only § 1988 in its discussion of the fee award.

sanctions must be imposed to discourage litigants from bringing frivolous claims which needlessly burden the courts. The district court's award of $6,575 in attorneys' fees to the defendants pursuant to 42 U.S.C. § 1988 is

AFFIRMED.